**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

**v.**

**P.R.G., Minor-Child-Appellant.**

**No. 85CA0985.**

Colorado Court of Appeals, Div. I.

Oct. 9, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., David L. Saine, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender Jeffrey S. Pagliuca, Deputy State Public Defender, Denver, for minor-child-appellant.

METZGER, Judge.

In this delinquency proceeding, a jury found P.R.G. to have committed acts constituting one count of second degree assault and carrying a concealed weapon and found her to be a violent juvenile offender. From the resulting adjudication of delin-

quency, P.R.G. appeals, contending that numerous violations of the court's sequestration order mandated a mistrial. We affirm.

P.R.G. and numerous other persons were involved in a brawl outside a bar, during which three persons received knife wounds. P.R.G. was charged with committing the three assaults.

At trial, the prosecution presented testimony that P.R.G. had stabbed Frank Zimmerman and also presented circumstantial evidence implicating P.R.G. in the other assaults. A witness for P.R.G. testified that she, the witness, had stabbed Zimmerman. P.R.G. testified that she had stabbed one victim in self-defense, but denied stabbing Zimmerman or the other victims.

After the prosecution's first witness testified, the juvenile court entered an order sequestering witnesses pursuant to CRE 615, stating that witnesses should not discuss the case. The jury found the assault allegation proven only as to the stabbing of Zimmerman.

This appeal is based upon three purported violations of the trial court's sequestration order. P.R.G. asserts that the violations were prejudicial and denied her a fair trial, and consequently, that the juvenile court erred when it denied her requests for a mistrial. We disagree.

■ The determination whether there has been a violation of a sequestration order and the penalty or sanction to be imposed are all matters resting within the sound discretion of the trial court. *People v. Gomez*, 632 P.2d 586 (Colo.1981); *Hampton v. People*, 171 Colo. 153, 465 P.2d 394 (1970). The moving party must demonstrate prejudice resulting from violation of a sequestration order to require a trial court to grant a mistrial. *See People v. Mackey*, 185 Colo. 24, 521 P.2d 910 (1974); *People v. Wright*, 678 P.2d 1072 (Colo.App. 1984).

■ In determining whether to impose sanctions for violation of a sequestration order, a trial court needs to consider three principal factors. First, it must consider the involvement, or lack thereof, of a party or his counsel in the violation of the order by the witness. *See Cruz v. People*, 149 Colo. 187, 368 P.2d 774 (1962). Second, it should consider the witness' actions and state of mind in his or her violation of the sequestration order, and whether the violation was inadvertent or deliberate. *See People v. Gomez, supra.* Third, the court should consider the subject matter of the violation in conjunction with the substance of the disobedient witness' testimony. In this regard, if the testimony is unrelated in substance to the violation of the sequestration order, the court enjoys wide discretion in its ability to allow the witness to testify. *See Hampton v. People, supra.*

■ In addition to a mistrial, sanctions for violation of a sequestration order fall into three categories: (1) citing the witness for contempt; (2) permitting comment on the witness' non-compliance in order to reflect on his or her credibility; or (3) refusing to let the witness testify or striking his or her testimony. J. Weinstein & M. Berger, *Weinstein's Evidence* § 615[03] (1985); *see generally* Annot., 14 A.L.R.3d 16.

### A.

The first purported violation of the sequestration order took place during a conversation between a prosecution witness and the victim Zimmerman.

At an *in camera* hearing on the minor child's motion for mistrial, testimony was presented that, after the witness had testified, Zimmerman was overheard to say to the witness, "Did her attorney ask you...." Zimmerman testified that he was merely inquiring of the witness whether he had finished testifying and whether Zimmerman would be called as the next witness. Zimmerman denied discussing the substance of the witness' testimony.

■ Finding that there was no evidence that the witnesses discussed their testimony or the facts of the case, the court declined to grant a mistrial or to preclude Zimmerman's testimony. On this state of the record, we perceive no error in the

court's ruling. *See Hampton v. People, supra.*

### B.

The second alleged violation of the sequestration order arises from the following remarks made by the court to counsel:

> "Before we go back in front of the jury, I did want to advise counsel I am instructing the bailiff from this point out to allow no persons in the courtroom who are friends of any parties—witnesses or of the parties. I have received a fairly reliable report there's apparently a pipeline being used to circumvent the sequestration of witnesses. Reports are being taken out of the courtroom to people outside and to avoid any potential problems this far into a very complicated trial, I think we will put an end to any of that."

■ Counsel for the minor child failed to respond to the court's remarks in any way. No motion for mistrial was made, nor did counsel inquire about the exact nature of the violation of the sequestration order. Accordingly, any error arising by virtue of these remarks was waived. *People v. Watson,* 668 P.2d 965 (Colo.App.1983).

Furthermore, the record does not reveal any additional evidence which would show the nature or extent of any prejudice caused by the violation. Hence, we must assume the juvenile court acted within its discretion. *See People v. Mackey, supra.*

### C.

The third violation of the sequestration order occurred during a conversation among an eyewitness to the stabbings, two of the victims, and the mother of a victim. In support for his motion for mistrial or for dismissal, counsel for P.R.G. made an offer of proof that the previous day, while seated in the witness waiting room, the victims had "lobbied" the eyewitness extensively, relating their version of the incident. They told him that they were certain the minor child had stabbed Zimmerman and that "he should be sure of his testimony." As a result of these discussions, the eyewitness recanted his previous identification of a photograph of P.R.G.'s friend as Zimmerman's assailant.

The court denied the motion to dismiss, ruling that the appropriate remedy would be to allow the eyewitness to testify and to permit the minor child to introduce his prior inconsistent statements, thus allowing the jury to determine which version it considered credible. It also ruled that a motion for mistrial or dismissal could be made only after the eyewitness had testified.

P.R.G.'s attorney elicited from the eyewitness his admission that the conversation in question had affected his testimony "a lot." He also described the details of the offense and expressed uncertainty concerning his identification of P.R.G.'s friend as Zimmerman's assailant.

As to the first factor, the degree of involvement of a party or his counsel in the violation of the order, we note that there is no hint in the record that the prosecutor was aware of the conduct of his witnesses, or that he was in any way negligent in failing to prevent their efforts. Indeed, when defense counsel first raised the issue, the prosecutor stated that he was as angry as defense counsel that the conversations had occurred.

As to the second factor, the witness' state of mind and actions, we conclude that the eyewitness' participation in the conversation was not deliberate, willful, or designed to obstruct the interests of justice. Rather, the record shows that he was the unwilling recipient of "lobbying" initiated by the prosecution's witnesses.

Finally, as to the third factor, the relationship between the testimony and the violation, there is no question that this incident related to material parts of the eyewitness' testimony; it went to the central issue of identification of Zimmerman's assailant.

■ The trial court initially rejected the possible sanction of declaring a mistrial, and adopted a "wait and see" attitude to ascertain the state of the evidence after the

eyewitness had testified and the facts surrounding the conversation among the eyewitness and the victims had been placed before the jury. We conclude that the trial court's ruling was not an abuse of its discretion. Its decision allowed the jury to hear all the facts and to make an assessment accordingly. This ruling was consistent with the purposes of the rules of evidence, *see* CRE 102, and constituted a practical solution to a difficult problem.

■ Moreover, although the eyewitness' testimony concerning the face of the assailant had changed after he was "lobbied," each version of his testimony showed that he was certain that Zimmerman's assailant had emerged from the passenger side of a car. P.R.G. and her friend both testified that the friend was the driver of this vehicle, and that P.R.G. was in the passenger seat. Thus, the jury could well have concluded that the "lobbying" by the prosecution's witnesses had no significant effect on the main point of the eyewitness' testimony.

The judgment is affirmed.

PIERCE and STERNBERG, JJ., concur.