Petitioner: **The PEOPLE of the State of Colorado,**

v.

Respondent: **Jorge E. MELENDEZ, Jr.**

No. 03SC494.

Supreme Court of Colorado.

Dec. 6, 2004.

Ken Salazar, Attorney General, Wendy J. Ritz, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, for Petitioner.

M. Colin Bresee, Denver, for Respondent.

HOBBS, Justice.

We granted certiorari [1] under C.A.R. 49 to review the court of appeals' decision in *People v. Melendez*, 80 P.3d 883 (Colo.App.2003). The trial court precluded the testimony of a defense witness who allegedly violated a sequestration order. Because the record does not demonstrate an adequate inquiry by the trial court into whether the sequestration violation actually occurred and because preclusion of the witness's testimony was not harmless error, we affirm the judgment of the court of appeals.

## I.

A jury convicted Jorge Melendez of multiple counts of sexual assault in the first and second degrees,[2] aggravated incest,[3] sexual assault on a child,[4] sexual assault on a child-pattern of abuse,[5] and sexual assault on a child under fifteen by one in a position of trust.[6]

Melendez's former step-daughter, a seven-year-old girl, reported to her grandparents that he had sexually assaulted her on several occasions when he was married to her mother. Melendez defended on the basis that the child fabricated the allegations due to emotional problems with her mother, Melendez, and the divorce.

The trial court issued a sequestration order barring witnesses from the courtroom while other witnesses were testifying at trial, but made an exception for Detective Kenneth Brecko, a prosecution advisory witness.

The prosecution proceeded with testimony by Jodi Curtin, the child advocacy center interviewer who had interviewed the child after the police began investigating the allegations. The prosecution showed a video-tape of Curtin's interview with the child to the jury. Curtin testified about her observations of the child's behavior during the interview, emphasizing a change in her demeanor when the alleged assaults were mentioned. On cross examination, defense counsel asked Curtin whether false allegations are more common in "high conflict" situations and she answered that they may be. She also said false accusations can occur in interviews but not often, in her experience.

After Curtin's testimony, Brecko, the detective assigned to the Melendez case, testified about general procedures used in investigating sexual assault cases.

The prosecution rested after Brecko's testimony. The trial court then excused jurors for lunch. Counsel and the court discussed several motions. The defense made a motion for judgment of acquittal due to inconsistencies in the number and type of charges in the case. The trial court granted this motion as to three of the four pattern of abuse counts. The defendant received his *Curtis* advisement.[7]

After the lunch recess, the court held further discussions outside the hearing of the jury. The defendant affirmed his intention to testify.

The attorneys and the court continued to discuss the pattern of abuse counts. The prosecutor argued about the admissibility of evidence related to an earlier instance when

1. We granted certiorari on the following issues:

   (1) Whether excluding a defense witness'[s] testimony automatically rises to an issue of constitutional dimension.
   (2) What is the breadth of the trial court's discretion in determining the remedy for a sequestration order violation?
   (3) Whether the court of appeals erred in deciding an issue on constitutional grounds not raised by the defendant, thus depriving the People of the opportunity to prove that any error is harmless[.]

2. § 18–3–402, 6 C.R.S. (2001).

3. § 18–6–302, 6 C.R.S. (2001).

4. § 18–3–405, 6 C.R.S. (2001).

5. § 18–3–405(2)(d), 6 C.R.S. (2001).

6. § 18–3–405.3(2)(a), 6 C.R.S. (2001).

7. *See People v. Curtis,* 681 P.2d 504, 514 (Colo. 1984).

the child was found left alone in her apartment. Melendez and the mother were charged with neglect in that instance. The defense planned to call the police officer who responded to that incident as a witness. Defense counsel conceded that evidence of the charges themselves and the resulting deferred sentences need not come in, but contended that all witness observations related to "this child's behavioral emotional status and more specifically whether she has ever shown signs of significant distress prior to [the time of the alleged assaults]" were relevant and material. Both counsel went on to discuss in greater detail the child's emotional state before and after the time of the alleged assaults. The court ruled that the defense could call the police officer involved with the child neglect call, but the charges and judgment in the neglect case were inadmissible.

After this discussion, the defense presented testimony from its expert witness, Dr. Spiegle. Spiegle criticized the manner in which Curtin conducted her interview, opining that she had used inappropriately suggestive and leading questions with the child, which may have affected the reliability of the child's answers. He also testified about a study showing that some twenty-three percent of sexual assault allegations by children in the Denver area in a particular time period proved to be false. Spiegle also testified about his evaluation of the child's behavior as seen on the videotaped interview. His view was that various pre-allegation events in her life may have impacted her emotional well-being and behavior.

Following Spiegle's testimony, the defense called the director of the child advocacy center where Curtin worked, followed by the officer who had responded to the neglect call. This testimony concluded at the end of the business day.

The defense planned to call Robert Curry the next day. Curry, a friend of Melendez, would have testified to his observations of the child's relationship with Melendez, as well as her behavior with her mother. The trial court precluded Curry from testifying.

The trial court based its preclusion order solely on the prosecution's assertion that Brecko had reported seeing Curry in the courtroom during portions of Curtin's testimony and during bench discussions after the recess.

Defense counsel responded that he was not aware of Curry's presence in the courtroom. He argued that Curry's testimony would not have been tainted by any of Curtin's testimony that he may have overheard, because Curry was planning to testify to completely different matters. Defense counsel made the following offer of proof regarding Curry's testimony:

> Judge, the expected nature of the testimony of Mr. Curry would essentially be that he has observed Mr. Melendez with the alleged victim in this case. He has seen him with the mother in this case. He has seen interactions between parent/child, Mr. Melendez and child. This is essentially the scope of his testimony.

Counsel also asserted that "having [Curry] stricken as a defense witness I believe is a really severe sanction in this case. I think that the Court could inquire or admonish or ask questions of Mr. Curry but not allowing him to testify I think would be a severe prejudice to the defendant."

The prosecutor answered that Curtin testified about the child's behavior and the kinds of behavioral changes to be expected after sexual assaults. The prosecutor argued that this testimony could taint Curry's testimony because it suggested ways to show that the child was emotionally disturbed before she made her allegations. The prosecutor also noted that Brecko had subsequently told her that he had seen Curry talking to the defendant during a break and it sounded as if they were discussing the case. The trial court delayed ruling on the issue until the following morning.

The next day, defense counsel and the prosecutor made essentially the same arguments. The court precluded Curry's testimony, ruling that,

> considering argument of both the defense and the prosecution, noting the length of time the defendant (sic) was in the courtroom, pa[ying] particular attention that the witness was in the courtroom during the testimony of Ms. Curtin, the Court is going

to not allow the witness to be called for the defense.

The trial court did not ask any questions of Brecko, Curry, or Melendez concerning the alleged sequestration violation.

Defense counsel rested his case after Melendez testified. The jury convicted Melendez on several counts.

On appeal, Melendez argued, inter alia, that the trial court abused its discretion by precluding Curry's testimony and that the error was not harmless. We agree and affirm the court of appeals' judgment.

## II.

Because the record does not demonstrate an adequate inquiry by the trial court into whether the sequestration violation actually occurred, and because preclusion of the witness's testimony was not harmless error, we affirm the judgment of the court of appeals.

### A. Standard of Review

■ In proper circumstances, the trial court may sequester witnesses, find that a witness has violated the sequestration order, and impose sanctions for the sequestration violation. *See People v. Wood,* 743 P.2d 422, 429–30 (Colo.1987); *People v. P.R.G.,* 729 P.2d 380, 382 (Colo.App.1986). We review the trial court's determinations for abuse of discretion. *People v. Stewart,* 55 P.3d 107, 122 (Colo.2002). If an abuse of discretion occurred, we must then determine whether the error is reversible. *See Salcedo v. People,* 999 P.2d 833, 841 (Colo.2000).

### B. Sequestration Order Violations

■ Trial courts shall impose sequestration orders on witnesses at the request of either party. *Martin v. Porak,* 638 P.2d 853, 854 (Colo.App.1981); CRE 615. The court may order witnesses to remain outside the courtroom and not discuss the case with each other. *People v. Brinson,* 739 P.2d 897, 899 (Colo.App.1987).

■ The Colorado sequestration rule is identical to the federal rule, so analysis of the rule by federal courts and commentators is germane. *See People v. Cheeks,* 682 P.2d

484, 485 (Colo.1984); CRE 615. Sequestration orders are meant to prevent witnesses from tailoring their testimony to that of other witnesses and to aid the court in the detection of false testimony. *United States v. Gibson,* 675 F.2d 825, 835 (6th Cir.1982).

■ Before it considers sanctions for a sequestration violation, the trial court must first determine that a violation has actually occurred and prejudice will result from unrestricted admission of the testimony. *See Wood,* 743 P.2d at 429–30.

■ Sanctions for violations of sequestration orders fall into three general categories: (1) citing the witness for contempt; (2) permitting counsel or the court to comment to the jury on the witness's non-compliance as a reflection on his or her credibility; and (3) precluding the witness's testimony. *P.R.G.,* 729 P.2d at 382; *see also* J. Weinstein & M. Berger, 4 *Weinstein's Federal Evidence* § 615.07[2] (2d ed.2004). Additionally, mistrial is a possible but rarely justified sanction. *P.R.G.,* 729 P.2d at 382.

■ Disqualifying witness testimony is a severe sanction to be imposed only after careful consideration. *See Holder v. United States,* 150 U.S. 91, 92, 14 S.Ct. 10, 37 L.Ed. 1010 (1893)("[T]he weight of authority is that [a witness] cannot be excluded on [the] ground [of a sequestration violation] merely....").

We have allowed prosecution witnesses to testify despite the allegation of a sequestration violation. *See Wood,* 743 P.2d at 429 (finding no prejudice to defendant requiring exclusion of witness for sequestration violation); *cf. People v. Gomez,* 632 P.2d 586, 594 (Colo.1981)(approving trial court's limitation on scope of testimony by witness who violated sequestration order).

We have not had occasion for over one hundred years to consider the implications of precluding a defense witness from testifying due to a sequestration violation. *See Vickers v. People,* 31 Colo. 491, 73 P. 845 (1903).

■ Sanctioning a defense witness for violating a sequestration order implicates important rights of the criminal defendant. *See Washington v. Texas,* 388 U.S. 14, 19, 87

S.Ct. 1920, 18 L.Ed.2d 1019 (1967)("The right to offer the testimony of witnesses . . . is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the [fact finder] so it may decide where the truth lies."); *People v. Chastain*, 733 P.2d 1206, 1212 (Colo.1987)(noting that a defendant's right to offer testimony at trial is a "fundamental element of due process of law")(internal citations omitted).

■ While fundamental, the right to present defense evidence is not absolute. A defendant must "make some plausible showing of how [the] testimony would have been both material and favorable to his defense." *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). The evidence may be excluded if it is unnecessarily duplicative. *Merritt v. People*, 842 P.2d 162, 166 (Colo.1992); CRE 403.

■ Nevertheless, cumulative evidence that may corroborate the defendant's own statement should ordinarily be admitted. *See People v. Green*, 38 Colo.App. 165, 553 P.2d 839, 840 (1976) ("[I]t is manifest that [evidence which is cumulative to some degree] should not be prohibited when it is sought to be introduced to corroborate [the defendant's] statement, which . . . may be, and often is, looked upon by the jury with some degree of suspicion.")(internal quotations omitted); *Towner v. State*, 685 P.2d 45, 50 (Wyo.1984)(the only evidence offered to corroborate defendant's testimony was admissible even though duplicative to defendant's own statement).

### C. Trial Court's Duty of Inquiry

■ The trial court has a duty of diligent inquiry into allegations of a sequestration violation. The trial court must first determine whether the violation actually occurred and, if so, whether prejudice will result from allowing the testimony. *See Wood*, 743 P.2d at 429 (considering whether disobedient witness's testimony prejudiced defendant).

In *Wood*, we concluded that the defendant was not prejudiced by the admission of a prosecution witness's testimony when the witness had violated a sequestration order. The record did not contain evidence of fabrication, collusion, or bad faith; the evidence the witness overheard by virtue of her violation was on an entirely different subject than her expected testimony; and her testimony was collateral to the primary issue in the case. *Id.; cf. Gomez*, 632 P.2d at 594 (no abuse of discretion to deny further sanctions for testimony that was not tainted by violation).

■ After the inquiry into the sequestration violation and resulting prejudice, the trial court proceeds to address the propriety of a sanction. In *Vickers* we reversed a trial court's exclusion of a defense witness's testimony where the court "refused to permit the witness to testify solely because of the violation of the rule" and not any other considerations. 31 Colo. at 495, 73 P. at 846. We held that a court must consider whether the defendant "was instrumental in procuring," "was in any way responsible for," or "consented" to the witness's presence in the courtroom. 31 Colo. at 494–95, 73 P. at 846.

■ In 1986, the Colorado Court of Appeals elaborated on *Vickers* and set forth three principal factors for trial court consideration in determining a sanction. *P.R.G.*, 729 P.2d at 382. First, the trial court must consider the involvement, or lack thereof, of a party or counsel in the violation of the order by the witness. *Id.* Second, the trial court should consider the witness's actions and state of mind in his or her violation of the sequestration order, and whether the violation was inadvertent or deliberate. *Id.* Finally, the trial court should consider the subject matter of the violation in conjunction with the substance of the disobedient witness's testimony and if the testimony is unrelated in substance to the violation of the sequestration order, the court enjoys wide discretion in its ability to allow the witness to testify. *Id.* We agree, but modify the first factor to require evidence of the party's or counsel's consent, connivance, procurement, or knowledge regarding the violation before a sanction can be imposed against that party. We base adoption of these factors, as modified, on our review of the caselaw.

As to the first factor, we observe that the majority of courts require evidence that the party or counsel was clearly associated with the violation before a sanction can be imposed against that party. In *Holder*, the first major case in this area, the United States Supreme Court held that

[i]f a witness disobeys the order of withdrawal, while he may be proceeded against for contempt, and his testimony is open to comment to the jury by reason of his conduct, he is not thereby disqualified, and the weight of authority is that he cannot be excluded on that ground, merely, although the right to exclude under *particular circumstances* may be supported as within the sound discretion of the trial court.

150 U.S. at 92, 14 S.Ct. 10 (emphasis added). Since that ruling, federal courts have determined that the "particular circumstances" referred to in *Holder* consist of the "consent, connivance, procurement or knowledge" of the party or counsel. *See, e.g., United States v. Solorio*, 337 F.3d 580, 593 (6th Cir.2003); *Gibson*, 675 F.2d at 836; *United States v. Kiliyan*, 456 F.2d 555, 560–61 (8th Cir.1972); *Taylor v. United States*, 388 F.2d 786, 788 (9th Cir.1967). State courts also apply this standard. *See, e.g., Jiosa v. State*, 755 N.E.2d 605, 608 (Ind.2001); *Redditt v. State*, 337 Md. 621, 655 A.2d 390, 394 (App.1995); *Towner*, 685 P.2d at 48; *Commonwealth v. Scott*, 496 Pa. 78, 436 A.2d 161, 163 (1981).

■ The rationale for this first factor is that refusal to permit a disobedient witness to testify because his or her violation has tainted the testimony is a sanction on the party offering the evidence, not the witness. Thus, it is logical and fair that the litigant be made "a party to and justly subject to sanction" before it is imposed. *See Taylor*, 388 F.2d at 788. We agree with this reasoning, and conclude that the party is subject to sanction where there is evidence of that party's or counsel's consent, connivance, procurement or knowledge regarding the violation.

■ As to the second factor, courts consider the witness's actions and state of mind

in his or her violation of the sequestration order, and whether the violation was inadvertent or deliberate. *P.R.G.*, 729 P.2d at 382. Some courts consider this factor in relation to whether a sanctionable violation occurred at all. *See, e.g., Redditt*, 655 A.2d at 396; *Jiosa*, 755 N.E.2d at 607 (no violation where witness did not intentionally seek to discuss the case with other witnesses). Others consider the witness's intent in determining the severity of the sanction appropriate. *Taylor*, 388 F.2d at 788; *Towner*, 685 P.2d at 48. We conclude that a court may find that no prejudicial violation occurred if it was clearly inadvertent. Similarly, when determining the severity of the sanction required to correct prejudice arising from a violation, the court may consider whether the violation was intentional or inadvertent.

■ As to the third factor, courts, in determining both prejudice and sanction, consider whether the proffered evidence would be material to the party's case and whether it would be unduly cumulative. *See, e.g., United States v. Hobbs*, 31 F.3d 918, 923 (9th Cir.1994)(after a finding on the fault issue, court is "also influenced by the fact that the witnesses' testimony was crucial to [the defendant's] presentation of his case"); *Kiliyan*, 456 F.2d at 561; *Jiosa*, 755 N.E.2d at 608; *Towner*, 685 P.2d at 49.[8] Because a criminal defendant has a substantial right to present his or her version of the facts and favorable evidence, *see Washington*, 388 U.S. at 19, 87 S.Ct. 1920, a trial court must determine whether proffered evidence is material and relevant to that case before limiting or excluding it and infringing that right. Even if the evidence is somewhat cumulative, it is admissible if it is the only evidence introduced to corroborate the defendant's own statement. *See Green*, 553 P.2d at 840.

### D. Application to This Case

■ In the case before us, the trial court did not make an adequate inquiry into whether the sequestration violation actually occurred. It simply accepted the prosecution's

---

8. Of course, evidence may be excluded that is independently determined to be irrelevant or otherwise inadmissible. *See People v. Saiz*, 32 P.3d 441, 446 (Colo.2001)(evidence must satisfy all relevant rules of admissibility to be admitted).

assertions. The record contains no verification that Curry was actually in the courtroom, let alone any facts regarding the length of his presence or what he heard. Similarly, the record is devoid of any indication that the trial court considered the factors applicable to the choice of appropriate sanction.

We do not, however, suggest that trial courts must hold "mini-trials" on the issue of a sequestration violation and the imposition of a sanction. *See People v. Watkins*, 83 P.3d 1182, 1186 (Colo.App.2003)(approving trial court's limitation on presentation of evidence to avoid unnecessary "mini-trials"); *see also United States v. Graham*, 2003 WL 23156628 *2 (D.Colo. Dec.2, 2003)(noting that mini-trials on evidentiary matters "in most instances would be temporally prodigal").

Utilizing the case before us as an example, we observe that: (1) the trial court could have asked further questions of the prosecution and the defense counsel; and (2) the trial court could have made a relatively brief inquiry of Brecko, Curry and Melendez in order to ascertain whether a sequestration violation had actually occurred. In any event, the party seeking exclusion of another party's witness bears the burden of demonstrating that such relief is appropriate under the circumstances.

The trial court must be satisfied and the record must demonstrate that the violation actually occurred and, if so, that prejudice will result from allowing the unrestricted testimony of the non-compliant witness. The trial court then proceeds with considering the three principal factors for determining a sanction. Here the chain was broken before any of the necessary links were forged; the existence of a sequestration violation was not adequately demonstrated.

### E. Not Harmless Error

■ The defendant objected to the preclusion of Curry's testimony. Defense counsel argued to the court that: (1) an inquiry could be made to determine the severity of the violation; (2) other sanctions might be imposed, such as admonishment; and (3) that exclusion of Curry would be prejudicial to his client.

■ We do not require that parties use "talismanic language" to preserve particular arguments for appeal, but the trial court must be presented with an adequate opportunity to make findings of fact and conclusions of law on any issue before we will review it. *See People v. Syrie*, 101 P.3d 219, 223, n. 7 (Colo.2004); *see also People v. Salazar*, 964 P.2d 502, 507 (Colo.1998).

Here, defense counsel offered the trial court an adequate opportunity to commence a sufficient inquiry into the violation and the possible prejudice resulting from its exclusion order. Curry's was the only evidence offered to corroborate the defendant's own testimony, as well as the only evidence offered that would link the expert's testimony about factors leading to false allegations with the case at hand. Our review of the record reveals that Curry's evidence would have materially assisted Melendez's case.

■ A defendant has a fundamental constitutional right to present his or her version of the facts and favorable evidence. *See Washington*, 388 U.S. at 19, 87 S.Ct. 1920. Here, a constitutional error was properly preserved for appeal, and the constitutional harmless error standard applies. *See Blecha v. People*, 962 P.2d 931, 942 (Colo.1998). We cannot say beyond a reasonable doubt that the exclusion of Curry's testimony did not contribute to the guilty verdict.

### III.

Accordingly, we affirm the court of appeals' judgment.