The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
July 28, 2022

**2022COA85**

**No. 20CA1603, *Giron v. Hice* — Government — Colorado
Governmental Immunity Act — Immunity and Partial Waiver —
Operation of Motor Vehicle Owned or Leased by Public Entity;
Vehicles and Traffic — Traffic Regulation — Emergency Vehicle
Exception**

Under *Tidwell v. City & County of Denver*, 83 P.3d 75 (Colo.

2003), the supreme court held that Colorado governmental

immunity could be waived when an operator of an emergency

vehicle is in pursuit of an actual violator of the law and does not

have the vehicle's emergency lights or sirens activated at all during

that pursuit. A division of the court of appeals extends *Tidwell* and

holds that an officer and the public entity for whom he works do not

qualify for immunity under section 42-4-108(2) and (3), C.R.S.

2021, when he activates his emergency lights or sirens for only part

of the pursuit.  Thus, the division remands the case to the district court to reinstate the plaintiffs' complaint.

COLORADO COURT OF APPEALS                                    **2022COA85**

Court of Appeals No. 20CA1603
Montrose County District Court No. 19CV30074
Honorable D. Cory Jackson, Judge

Nichele Giron, individually and as Personal Representative of the Estate of
Walter Giron; Amanda Giron; and Thomas Short, as the Personal
Representative of the Estate of Samuel Giron,

Plaintiffs-Appellants,

v.

Justin Hice and Town of Olathe,

Defendants-Appellees.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE JOHNSON
Berger and Brown, JJ., concur

Announced July 28, 2022

Killian Davis Richter Kraniak PC, J. Keith Killian, Damon Davis, Joseph H.
Azbell, Grand Junction, Colorado, for Plaintiffs-Appellants

Tucker Holmes P.C., Bradley D. Tucker, Winslow R. Taylor III, Centennial,
Colorado, for Defendants-Appellees

¶ 1     This case requires us to analyze the supreme court's holding in *Tidwell v. City & County of Denver*, 83 P.3d 75 (Colo. 2003). *Tidwell* held that immunity is waived when the operator of an emergency vehicle, while in pursuit of an actual or suspected violator of the law, does not activate the vehicle's emergency lights or siren. *Id.* at 80-81

¶ 2     The question presented in this case was left unanswered in *Tidwell*: Does an officer operating an emergency vehicle have the protection of sovereign immunity under section 42-4-108(2) and (3), C.R.S. 2021, when he is in pursuit of an actual or suspected violator of the law but when he activates his emergency lights or sirens for only part of the pursuit?  The answer to this question is no.

¶ 3     Nichele Giron, individually and as personal representative of the estate of Walter Giron; Amanda Giron; and Thomas Short, as personal representative of the estate of Samuel Giron (collectively, the Girons),[1] appeal the district court's judgment dismissing their

---

[1] Because multiple plaintiffs share Giron as a last name, we will refer to a particular individual by first name for clarity.  We mean no disrespect in doing so.

tort action against Officer Justin Hice (Officer Hice) and the Town of Olathe (Olathe) for lack of subject matter jurisdiction under the Colorado Governmental Immunity Act (CGIA).

¶ 4 Officer Hice's patrol car collided with the van that Walter was driving and Samuel was riding in as a passenger. Both Walter and Samuel died from their injuries and Officer Hice was seriously injured. The Girons' complaint asserted that any sovereign immunity granted to Officer Hice and Olathe was waived under section 24-10-106(1)(a), C.R.S. 2021, and that the exception to the waiver under section 42-4-108(2) and (3) did not apply because Officer Hice had not activated his emergency lights or sirens, or alternatively, even if he did activate his lights, he drove in a manner that endangered life or property.

¶ 5 Following a *Trinity* hearing, *see Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993), the district court dismissed the complaint, determining that Officer Hice and Olathe were immune from suit because Officer Hice had activated his emergency lights five to ten seconds before the collision. The district court also determined that, although Officer Hice exceeded

the speed limit, he did not operate his vehicle in a manner that endangered life or property.

¶ 6    We reverse the judgment of dismissal and remand for the district court to reinstate the Girons' complaint.

## I.    Background

¶ 7    Officer Hice of the Olathe Police Department was on speed patrol along Highway 50.  His radar detected a white Toyota driving in the opposite direction going over seventy miles per hour (mph) in a fifty-five-mph zone.  Officer Hice made a U-turn at the next available emergency turnaround and accelerated to catch up to the white Toyota.  Data downloaded from Officer Hice's patrol car recorded that his speeds reached 103 mph as he approached the intersection of Highway 50 and 12th Street.

¶ 8    Walter and his brother Samuel were in Walter's van — which had a trailer attached — waiting to turn left at the intersection of Highway 50 and 12th Street.  Walter waited for the white Toyota to cross the intersection and then began to make a left-hand turn across the highway.  Officer Hice saw the van and swerved right in an attempt to avoid a collision.  But the front of his patrol car

struck the passenger side of the van.  At the time of impact, Officer

Hice was traveling around seventy-five to eighty mph.

Image of Incident[2]



¶ 9    The Girons sued Olathe and Officer Hice.  Olathe filed a

motion to dismiss, later joined by Officer Hice, asserting

governmental immunity.  Olathe and Officer Hice argued that he

had his emergency lights activated at the time of the incident and

[2] Figure 29 from Exhibit 15, which was admitted as evidence at the *Trinity* hearing, depicts the intersection of Highway 50 and 12th Street and the orientation of both vehicles at the start of the crash. Officer Hice's patrol car is shown in green, and Walter and Samuel's van is shown in dark blue, with the attached trailer shown in brown.

4

that, while he was speeding, his driving did not endanger life or property.

¶ 10     After a *Trinity* hearing, the district court found that it was "undisputed that [Officer Hice] never put his siren on initially, nor did he put on his emergency lights." The court also found that Officer Hice "reached about 103 miles an hour just prior to the accident." The court determined, however, that Officer Hice's "[emergency] lights were on for between five and 10 seconds prior to the accident and that that was sufficient time to alert other drivers in the immediate vicinity to take care." As a result, the court dismissed the Girons' complaint. This appeal followed.

## II.     Standard of Review and Applicable Law

¶ 11     Generally, governmental entities in Colorado are "immune from liability in all claims for injury which lie in tort or could lie in tort." § 24-10-106(1). Because the CGIA immunity provisions derogate Colorado's common law, "we construe the [C]GIA provisions that withhold immunity broadly [and] we construe the exceptions to these waivers strictly." *Tidwell*, 83 P.3d at 81 (quoting *Corsentino v. Cordova*, 4 P.3d 1082, 1086 (Colo. 2000)). We strictly construe the exceptions to waiver provisions because "the ultimate

5

effect of the exceptions is to grant immunity." *Corsentino*, 4 P.3d at 1086.

¶ 12    An issue of governmental immunity under the CGIA presents a question of subject matter jurisdiction to be determined under C.R.C.P. 12(b)(1). *Tidwell*, 83 P.3d at 85. "Because the CGIA protects the government from suit, the district court must necessarily make factual findings to ensure that the court has jurisdiction to hear the case." *City & Cnty. of Denver v. Dennis*, 2018 CO 37, ¶ 10. And "the plaintiff bears the burden of proving that the court has subject matter jurisdiction to hear the case." *Tidwell*, 83 P.3d at 85.

¶ 13    This burden, however, "is relatively lenient, as the plaintiff is afforded the reasonable inferences from [the] undisputed evidence." *Dennis*, ¶ 11. And "because *Trinity* hearings are limited in nature, and because tort concepts are naturally subjective, the district court should not fully resolve the issue of *whether* the government has committed negligence; rather, the court should only satisfy itself that it has the ability to hear the case." *Id.* Instead, issues such as negligence or causation "are matters properly resolved by

the trier of fact." *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1384 (Colo. 1997).

¶ 14    Thus, "[i]t is well-established that the application of sovereign immunity [under the CGIA] presents a mixed question of fact and law." *Maphis v. City of Boulder*, 2022 CO 10, ¶ 14. "[W]e defer to the district court's factual findings unless they are clearly erroneous." *Id.* A factual finding is clearly erroneous when it lacks no support in the record. *Whiting-Turner Contracting Co. v. Guarantee Co. of North America*, 2019 COA 44, ¶ 36.

¶ 15    After the questions of fact are resolved, "we review questions of governmental immunity de novo." *Maphis*, ¶ 15 (quoting *Dennis*, ¶ 12). "As with all matters of statutory construction, in construing the [C]GIA, including its waivers, we must give effect to the legislature's intent." *Tidwell*, 83 P.3d at 81. To effectuate that intent, "'[w]e look to the language of the statute, giving words their plain and ordinary meaning.'" *Id.* (quoting *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 799 (Colo. 2000)). If the plain language of the statute "'demonstrates a clear legislative intent, we look no further in conducting our analysis.'" *Id.* (quoting *Springer*, 13 P.3d at 799).

## III.    Preservation

¶ 16    Officer Hice and Olathe contend that the issue of whether Officer Hice failed to activate his lights in sufficient time to alert Walter and Samuel is not preserved because the Girons only asserted below that the officer completely failed to activate his emergency lights before the collision.  We disagree.

¶ 17    In the complaint, the Girons alleged that "Walter Giron was not able to react and yield to the Impala [Officer Hice's patrol vehicle] because the Impala was approaching at a speed almost twice as fast as the speed limit and the Impala's emergency lights were not turned on, or were not turned on in time to be seen and reacted to by a reasonable person."  In response to Officer Hice and Olathe's brief,[3] the Girons argued that the relevant time period for the court to consider in determining whether Officer Hice and Olathe were entitled to immunity was the entire thirty-four seconds prior to the crash, which was the time in which Officer Hice exceeded speed limits, as shown on his body camera video.  They

---

[3] Olathe and Officer Hice denominated their filing as a trial brief, although it was more accurately a pre-hearing brief, as it was submitted prior to the *Trinity* hearing.

8

asked the court to not just limit its inquiry and analysis to the nine seconds immediately prior to the crash when Officer Hice activated his emergency lights.

¶ 18    "We do not require that parties use 'talismanic language' to preserve particular arguments for appeal." *People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004).  Instead, "the [district] court must be presented with an adequate opportunity to make findings of fact and conclusions of law on any issue before we will review it." *Id.* The district court specifically made findings that Officer Hice's emergency lights were activated for a sufficient amount of time prior to the collision to alert others to his presence, which demonstrates to us that this contention was adequately raised for the court to have considered (and rejected) it.  Consequently, the Girons preserved this issue.

IV.    Activation of Emergency Lights and Siren in a Pursuit

¶ 19    We conclude that the district court applied the incorrect legal standard and thus improperly determined that Officer Hice and Olathe were entitled to immunity.  Based on the plain language of section 42-4-108 — an exception to the waiver of immunity under section 24-10-106(1)(a) — an officer is not entitled to immunity

9

when he does not activate his emergency lights or sirens for the entire time he exceeds the speed limit and is in pursuit of an actual or suspected violator of the law.

### A.    The Emergency Vehicle Exception

¶ 20    Section 24-10-106(1)(a) provides that sovereign immunity is waived by a public entity in any action for injuries resulting from "[t]he operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of employment, *except emergency vehicles operating within the provisions of section 42-4-108(2) and (3), C.R.S.*"  (Emphasis added.)

¶ 21    *Corsentino*, 4 P.3d at 1087, summed up the interplay of sections 24-10-106(1)(a) and 42-4-108(2) and (3):

- "[S]ection 24-10-106 grants immunity to public entities and their employees generally."

- "The motor vehicle immunity waiver of section 24-10-106(1)(a) takes away this immunity for the operation of motor vehicles by public entities and their employees."

- "The emergency vehicle exception, however, restores immunity to the public entities and their employees operating emergency vehicles in response to emergency calls."

10

- "Subsections (a) to (d) of section 42-4-108(2) specifically grant immunity for specific traffic violations, such as speeding and running stop signals."  Finally,

- "[T]here are possible conditions to the violations of subsections (b) and (c), which, if left unsatisfied, may place the public entities and their employees back within the motor vehicle immunity waiver, thereby subjecting them to potential liability in tort."

¶ 22    Section 42-4-108(2), provides, in relevant part, that "[t]he driver of an authorized emergency vehicle . . . when *in pursuit* of an actual or suspected violator of the law" may "exercise the privileges set forth in this section."  (Emphasis added.)  As relevant here, such privileges include "[e]xceed[ing] the lawful speeds set forth in section 42-4-1101(2)[, C.R.S. 2021,] or exceed[ing] the maximum lawful speed limits set forth in section 42-4-1101(8) so long as said driver does not endanger life or property."  § 42-4-108(2)(c).  But section 42-4-108(3) states that the exception to the waiver of immunity under section 24-10-106(1)(a) applies to the privilege of speeding under section 42-4-108(2)(c) "*only when* such vehicle is making use of audible or visual signals" that meet certain statutory

11

requirements. (Emphasis added.) Section 42-4-108(3) then notes that an emergency vehicle may not need to use audio and visual signals, even when in "actual pursuit of a suspected violator" of a traffic law, "so long as such pursuit is being made to obtain verification of or evidence of the guilt of the suspected violator." *Id.*

¶ 23 *Tidwell* determined that "[t]he net effect of these statutes is that a governmental entity is generally immune from tort liability in connection with the operation of an emergency vehicle," but "the vehicle must be operating with emergency lights and siren activated, unless the vehicle is in pursuit of a suspected violator to obtain evidence of guilt." *See* 83 P.3d at 81. Thus, *Tidwell* concluded, "[w]here an officer already has probable cause to stop a driver and the officer is pursuing the driver for that reason, the statute contemplates the use of emergency signals." *Id.* at 84.

¶ 24 Because the officer's emergency lights or sirens were not activated at all in *Tidwell,* the supreme court concluded that the officer did not satisfy the conditions in section 42-4-108. *Id.* at 78-79. It reached this conclusion by "look[ing] at section 42-4-108 as a whole" to ascertain the General Assembly's purpose of the lights and siren requirement. *Id.* at 82.

¶ 25    *Tidwell* reasoned that "it is clear that a police vehicle in pursuit of a driver suspected of violating Title 42 *must* activate its lights and siren in order to alert the suspect to stop as well as to warn other drivers of the ongoing pursuit." *Id.* at 83 (emphasis added).  The court continued, "the purpose of the lights and siren requirement is to ensure that operators of emergency vehicles give due regard to the safety of other drivers on the road," and activating the lights and siren is not "a mere request to stop or pull over." *Id.* It concluded that, "[w]hile undoubtedly one of the purposes of a police vehicle's audible and visual signals is to order a pursued vehicle to stop, another purpose is to make other drivers aware of the pursuit so they may alter their conduct accordingly." *Id.*

¶ 26    Officer Hice's emergency lights were only activated for the last five to ten seconds of the pursuit prior to the collision with Walter's van (and his siren was never activated).  Thus, *Tidwell* did not need to address the factual situation before us. We conclude that, if the officer and the public entity for whom he works seek to have governmental immunity restored under section 42-4-108(2)(c) and (3) when the officer is operating an emergency vehicle in pursuit of an actual or suspected violator of the law and the officer is

13

exceeding speed limits, the officer must activate lights or sirens as soon as the vehicle exceeds the speed limit. It is not enough for the officer to activate lights or sirens sometime after exceeding the speed limit while in pursuit. We extend *Tidwell*'s holding for three reasons.

¶ 27     First, the plain language of section 42-4-108(2)(c) and (3) dictates this result. Section 42-4-108(2) states that the "*driver* of an authorized emergency vehicle" may exercise certain "privileges," such as exceeding the speed limit under section 42-4-108(2)(c). (Emphasis added.) That same provision says that the "privilege" to exceed speed limits may be exercised by an officer in pursuit of an actual or suspected violator of the law. And under section 42-4-108(3), the "privilege" of the driver to exceed speed limits "*shall* continue to apply" for purposes of restoring governmental immunity "*only when* such vehicle is making use of audible or visual signals." (Emphasis added.) *See Ricchio v. Colo. Sec. Comm'r*, 2022 COA 35, ¶ 28 ("Unless the context indicates otherwise, the word 'shall' generally indicates that the General Assembly intended the provision to be mandatory." (quoting *DiMarco v. Dep't of Revenue*, 857 P.2d 1349, 1352 (Colo. App. 1993))). Nothing in the statutory

language authorizes restoration of governmental immunity to an officer exercising the privilege of speeding unless the officer is using lights or sirens.

¶ 28　　Second and relatedly, the General Assembly did not give an officer discretion under section 42-4-108(3) to decide when to activate his emergency lights or sirens during the pursuit of an actual violator of Title 42 or a suspected violator of another law. Under what is known as the "verification clause" in section 42-4-108(3), if an officer has not yet ascertained whether a person has violated a law under Title 42, he may exceed speed limits without activating lights or sirens "so long as such pursuit is being made to obtain verification of or evidence of the guilt of the suspected violator." *See Tidwell*, 83 P.3d at 83 ("[W]e construe the verification exception merely to permit a reasonably safe pursuit of a suspect, without lights and siren, only where the officer is trying to confirm his suspicions that the driver has violated Title 42 and where the officer otherwise has no reasonable suspicion or probable cause to stop the driver of the vehicle.").

¶ 29　　Thus, the officer has discretion to *not* activate his lights or sirens while in pursuit of a suspected violator of Title 42 so long as

he is trying to verify whether the suspected violator is an actual violator of a traffic law. But, once the officer determines that he is in pursuit of an actual violator of Title 42 or a suspected violator of another law, he has no discretion to decide when to activate his lights or sirens. Lights or sirens must be activated once the officer exceeds lawful speeds or engages in the other privileged conduct specified in section 42-4-108(2). § 42-4-108(3). We will not read into the statute conditions not expressly included. *See People ex rel. Rein v. Meagher*, 2020 CO 56, ¶ 31 ("[W]hen the General Assembly includes a provision in one section of a statute, but excludes the same provision from another section, we presume that the General Assembly did so purposefully." (quoting *Well Augmentation Subdistrict v. City of Aurora*, 221 P.3d 399, 419 (Colo. 2009))); *Specialty Rests. Corp. v. Nelson*, 231 P.3d 393, 397 (Colo. 2010) ("[W]e will not construe a statute in a manner that assumes the General Assembly made an omission; rather, the General Assembly's failure to include particular language is a statement of legislative intent.").

¶ 30     Finally, because section 42-4-108 is an exception to the waiver of immunity, we must strictly construe it because the effect of its

16

application would be to grant immunity. *Corsentino*, 4 P.3d at 1086. *Tidwell* concluded that the General Assembly's purposes in enacting an audible or visual signal requirement for an emergency vehicle were twofold: not only to command the actual or suspected violator of the law to stop, but also to warn other drivers on the road to "alter their conduct accordingly." 83 P.3d at 83; *see also* § 42-4-213(5), C.R.S. 2021 ("The use of either the audible or the visual signal equipment described in this section shall impose upon drivers of other vehicles the obligation to yield right-of-way and stop . . . ."); § 42-4-705(1), C.R.S. 2021 ("Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals," the driver shall yield, attempt to drive to a position as close as possible to the right-hand edge of the roadway, and stop "until the authorized emergency vehicle has passed.").

¶ 31    Thus, by strictly construing the exception restoring immunity to public entities and operators of emergency vehicles under the circumstances set forth in section 42-4-108(2)(c), we are simply effectuating the General Assembly's intent that an officer activate his lights or sirens once he exceeds the speed limit when he is in pursuit of an actual or suspected violator of the law.

17

## B. Application

¶ 32    The parties do not dispute that Officer Hice was in pursuit of an actual violator of the law under Title 42 — the driver of the white Toyota exceeding the speed limit. Thus, the parties agree that the exception in the verification clause does not apply to excuse Officer Hice's failure to active his emergency lights or sirens during the pursuit.

¶ 33    Consistent with *Tidwell,* Officer Hice began his "pursuit" once he began following the white Toyota. Then he passed seven other cars. Officer Hice was exceeding the speed limit of 55 mph, driving at 75 mph through the northern intersection of Highway 50, 80 mph when he passed the seventh driver, and 103 mph just prior to the accident.

¶ 34    Based on Officer Hice's body camera footage, approximately thirty-six seconds elapsed between when he began his pursuit of the speeding vehicle and when his patrol car collided with Walter and Samuel's van. The district court found that Officer Hice "illuminated his emergency lights roughly 25 seconds within his pursuit." This finding is consistent with the unrebutted testimony the district court heard from Rosa Perez, a forensic analyst for the

18

Fort Collins Police Services, that Officer Hice told her that he did not turn on his sirens because it interferes with his radio. Officer Hice also acknowledged that he did not activate his emergency lights until he passed the seventh person, who testified not seeing any lights illuminated. Instead, Officer Hice testified that he has a "personal policy of turning on his lights when he reache[s] about 80 mph" and that he did not activate his emergency lights immediately because, in his experience, it can make the behavior of other motorists "a little chaotic."

¶ 35    Seven witnesses in vehicles that were passed by Officer Hice testified that they did not see the emergency lights activated on his patrol car, including up to the point of the crash. Conversely, the witness in the vehicle behind Walter's van — a retired police officer — testified that he was certain Officer Hice's emergency lights were activated on his patrol car as Officer Hice approached the intersection. The district court discounted the testimony of the seven drivers and credited the testimony of the retired officer.

¶ 36    This led the district court to determine, applying an incorrect legal standard, that because Officer Hice's emergency lights were activated for at least five to ten seconds prior to the accident, other

19

drivers had "sufficient time" to react, and thus Office Hice and Olathe were entitled to immunity. But given our above interpretation of section 42-4-108(2)(c) and (3), even though Officer Hice activated his emergency lights five to ten seconds before the collision with Walter and Samuel's van, he and Olathe do not, as a matter of law, qualify for the exception. For Officer Hice and Olathe to be entitled to immunity, Officer Hice would need to have activated his emergency lights or sirens the moment he exceeded the speed limit during his pursuit of the white Toyota.

¶ 37    As we noted above, the General Assembly carved out the immunity waiver exception for emergency vehicles to balance a responder's privilege to exceed speed limits with the need to provide safety for other drivers. Officer Hice's "personal policy" of deciding when to activate his lights or sirens when he exercises the privilege to exceed speed limits in pursuit of an actual violator of the law does not qualify him for immunity under section 42-4-108(2)(c) and (3). To hold otherwise would allow operators of emergency vehicles, in their own discretion, to decide *when* to activate their sirens or lights, contrary to the plain language of the statute. *See Tidwell*, 83 P.3d at 81.

¶ 38    Consequently, we conclude that the district court erred when it determined Officer Hice and Olathe satisfied the conditions in section 42-4-108(2)(c) and (3) entitling them to immunity under the exception to the waiver of immunity in section 24-10-106(1)(a).[4]

## V.    Causal Relationship

¶ 39    Olathe and Officer Hice contend that, due to the district court's finding that Walter had "sufficient time" to react to the presence of Officer Hice's vehicle once the emergency lights were activated, "there is no basis in the record to maintain the accident *resulted from* Officer Hice's failure to use emergency lights at any time." We disagree that this is the proper standard to determine a causal relationship in this circumstance.

¶ 40    As noted above, section 24-10-106(1)(a) waives sovereign immunity of a public entity "in an action for injuries resulting from . . . [t]he operation of a motor vehicle." For purposes of determining whether sovereign immunity is waived in this case, we

---

[4] Based on our interpretation of the exception to the waiver of immunity in section 42-4-108(3), C.R.S. 2021, we need not address the parties' extensive arguments as to the standard for analyzing when an emergency operator exceeding the speed limit endangers life or property.

21

consider whether Walter's and Samuel's injuries resulted from the operation of Officer Hice's motor vehicle.

¶ 41    *Tidwell* analyzed the "resulting from" language in section 24-10-106(1)(a).  That case involved injuries sustained by a passenger in a limousine, who was hit by a driver being pursued by an officer; thus, the officer was not the one directly involved in the collision that caused the passenger's injuries.  *Tidwell*, 83 P.3d at 77.  The court acknowledged that the "resulting from" language suggests "some relationship between a plaintiff[']s injuries and the public entity[']s conduct before a waiver of immunity is triggered."  *Id.* at 86.  But it also disagreed that "resulting from" and "caused by" were synonymous based on the fact the CGIA used "caused by" in other provisions but not in section 24-10-106(1)(a).  *Id.*; *see also* § 24-10-106(1)(d)(II) ("[a] dangerous condition caused by the failure to realign a stop sign"); § 24-10-106(1)(d)(III)) ("[a] dangerous condition caused by an accumulation of snow and ice").

¶ 42    Instead, *Tidwell* determined that "a waiver must be found where the injuries complained of occurred as a consequence or effect of any of the public entity's alleged conduct or omissions."  83 P.3d at 86.  This meant the district court was not required to

22

determine whether Tidwell's injuries were "caused by" the officer's conduct for immunity purposes, as such a finding would be for the fact finder. *Id.* Therefore, "a waiver will exist where a plaintiff alleges facts proving a minimal causal connection between the injuries and the specified conduct." *Id.*

¶ 43 In *Corsentino,* 4 P.3d at 1085, the supreme court did not address the "resulting from" language because the deputy sheriff involved in that case was *directly* involved in the collision at issue. The deputy sheriff received a dispatch call in response to a home burglary alarm. The deputy responded with lights and sirens activated. While en route, the deputy was speeding and his vehicle collided with another car, resulting in the death of the other driver. *Id.* At issue in *Corsentino* was whether the officer was entitled to the restoration of immunity under section 42-4-108(2) because, although the vehicle's lights and sirens were activated the entire time he was speeding, the question was whether the sheriff drove in a manner that endangered life or property.

¶ 44 Once the supreme court in *Corsentino* determined that the deputy sheriff was not entitled to the exception to immunity in section 42-4-108, it remanded the case to the district court, noting

23

that the deputy sheriff and his employer may be "subject to potential liability in tort." *Id.* at 1093. In other words, the court did not engage in a causal relationship analysis because the plaintiff's "injuries result[ed] from" the operation of an emergency vehicle, § 24-10-106(1)(a), and immunity was not restored based on one of the conditions in section 42-4-108(2) and (3).

¶ 45  Here, Officer Hice operated the vehicle that *directly* collided with Walter's van, and that collision resulted in the injuries sustained by Walter and Samuel. We conclude, for purposes of jurisdiction under the CGIA, that Walter's and Samuel's injuries resulted from the operation of an emergency vehicle, and in the absence of the condition of lights or sirens activated while exceeding the speed limit when in pursuit of an actual violator of the law, this brings the Girons' claims within the scope of the immunity waiver in section 24-10-106(1)(a). To resolve the immunity question, the Girons need not allege and the court need not determine more of a causal connection between the public entity's conduct and the injuries.

24

¶ 46    Officer Hice and Olathe are not immune under the CGIA from liability for Walter's or Samuel's injuries.  As a result, Olathe and Officer Hice may be subject to potential liability in tort.

VI.    Conclusion

¶ 47    We reverse the judgment of dismissal and remand to the district court to reinstate the Girons' complaint.

JUDGE BERGER and JUDGE BROWN concur.