121 P.3d 260
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Rigoberto VENZOR, Defendant-Appellant.
No. 03CA2043.
Colorado Court of Appeals, Div. III.
February 24, 2005.
Rehearing Denied June 23, 2005.
Certiorari Denied October 17, 2005.

 John W. Suthers, Attorney General, Christine C. Brady, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee.
 Rigoberto Venzor, Pro Se.
 DAILEY, J.
 Defendant, Rigoberto Venzor, appeals from the trial court's order denying his Crim. P. 35(c) motion for postconviction relief. We affirm.
I. Background
 Defendant was charged with first degree murder after he shot his wife to death with a handgun during an argument. Defendant agreed to plead guilty to second degree murder in exchange for the dismissal of the first degree murder charge and a sentence of between sixteen and forty years in the Department of Corrections.
 When, at the providency hearing, defendant was asked whether he was thinking clearly, he responded,
 I hope so.... It's a pretty important decision and I've been under a great amount of stress the last couple of days. I believe the [plea] deadline was [four days earlier] and ever since then I — I have been thinking a lot and maybe had some lack of sleep and so on. So I'm just under a lot of pressure.
 Thereafter, defendant refused to admit that he had "knowingly" shot his wife, as required for a second degree murder conviction. According to him, he could not have acted "knowingly" because he "wasn't in a reasonable state of mind." He described his mental state at the time of the shooting as "reckless"; his attorney indicated that, from her conversations with him, she concluded defendant truly believed that he had killed his wife in a heat of passion.
 Nonetheless, defendant acknowledged that there existed a sufficient factual basis upon which to convict him of second degree murder. He further acknowledged that it was in his best interest to plead guilty to that charge and avoid the risk of receiving a sentence of life without possibility of parole if convicted at trial of first degree murder, or a sentence longer than the agreed cap of forty years if convicted at trial even of second degree murder.
 The prosecution agreed to, and the trial court accepted, defendant's guilty plea under North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970), which "permits a defendant to assert innocence as to one or more elements of the crime, but consent to the imposition of the conviction and penalty." People v. Birdsong, 958 P.2d 1124, 1127 (Colo.1998).
 The trial court sentenced defendant to forty years imprisonment. Almost three years later, defendant filed a pro se Crim. P. 35(c) motion to vacate his plea, asserting, among other things, that (1) in light of his disclosure about lacking sleep and being stressed, his attorney should have investigated, and the court should have further inquired about, his mental capacity to enter a guilty plea; (2) in agreeing to accept an Alford plea, the prosecution materially altered, and consequently breached, the parties' plea agreement; and
(3) the trial court impermissibly participated in the plea negotiations and did not, in any event, adequately apprise him of the nature of an Alford plea.
 The trial court appointed counsel to represent defendant, but counsel was subsequently permitted to withdraw from the case under People v. Breaman, 939 P.2d 1348, 1351 (Colo.1997) (counsel may petition court to withdraw from postconviction matter after determining that it has no arguable merit). Thereafter, without conducting a hearing, the trial court denied defendant's motion in a written order.
II. Analysis
 Defendant contends that the trial court erred in denying his motion without conducting an evidentiary hearing or appointing different counsel to assist him. We disagree.
 A Crim. P. 35(c) motion may be denied without a hearing if the motion, files, and record clearly establish that the defendant is not entitled to relief. People v. Flagg, 18 P.3d 792, 795 (Colo.App.2000). Summary denial of a postconviction relief motion is also appropriate if the claims raise only an issue of law, or if the allegations, even if true, do not provide a basis for relief. See People v. Rodriguez, 914 P.2d 230, 255 (Colo.1996). Likewise, if the claims are bare and conclusory in nature, and lack supporting factual allegations, the motion may also be denied without a hearing. See Moore v. People, 174 Colo. 570, 572, 485 P.2d 114, 115 (1971); People v. Clouse, 74 P.3d 336, 341 (Colo.App.2002).
 A trial court may decline to appoint counsel in connection with a motion that may be denied as a matter of law without an evidentiary hearing. See Duran v. Price, 868 P.2d 375, 379 (Colo.1994); People v. Zuniga, 80 P.3d 965, 973 (Colo.App.2003).
 With these principles in mind, we turn to the issues defendant claims warrant a hearing and appointment of counsel.
A. Defendant's Mental Capacity
 We reject defendant's assertion that either his counsel or the court needed to further investigate or inquire about his mental capacity to enter the plea.
 Initially, it is important to distinguish between mental capacity, for purposes of assessing a defendant's competency to enter a guilty plea, and mental state, for purposes of assessing the knowing and voluntary nature of the plea. See Godinez v. Moran, 509 U.S. 389, 401 n. 12, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993) ("The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings. The purpose of the `knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." (citation omitted)).
 Here, the record clearly refutes any concern about either defendant's mental capacity to enter a plea or his actual understanding of the significance and consequences of his decision. On the day of the providency hearing, the trial court found, with ample record support, that defendant was "alert and intelligent" and that he had "given this quite a bit of thought and frankly has expressed himself to the court today with regard to the elements and detail[s] of this agreement.... He knows what he is doing and he understands this decision that he is making."
 Further, nothing about defendant's "stress or strain" comment (or related allegations) suggests the existence of the type of mental state that would undermine the voluntariness of a plea. See People v. Kyler, 991 P.2d 810, 816-17 (Colo.1999) ("A defendant's plea is involuntary if he was `so gripped by fear ... that he did not or could not, with the help of counsel, rationally weigh the advantages of going to trial against the advantages of pleading guilty.'" (quoting Brady v. United States, 397 U.S. 742, 750, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747 (1970))); State v. Trackwell, 250 Neb. 46, 547 N.W.2d 471, 476 (1996) ("The stress of enduring criminal litigation is considerable for any defendant, guilty or innocent. . . . Absent some evidence of physical
or mental coercion, whatever stress a defendant perceives from litigation alone cannot invalidate his plea."); see also United States v. Serrano, 622 F.Supp. 517, 519 (D.P.R.1985) (rejecting claim plea invalid because defendant was under great stress: " no doubt ... every accused who comes before this Court is under stress").
 Finally, the record reflects that the trial court took action to assure itself that defendant's "stressed" mental state would not interfere with his ability to render a valid plea. The court stated, "I need to hear from you that despite the stress you have been feeling by the deadline that was imposed for the offer, the plea agreement offer that was made, that you are thinking clearly today," to which defendant responded, "I believe so, yes."
 Under these circumstances, we conclude, as a matter of law, that no further inquiry or investigation into defendant's mental state was required of the court or defense counsel.
B. Material Alteration of Plea Agreement
 We also reject defendant's contention that, in changing the regular guilty plea to an Alford plea, the prosecution materially altered (and consequently breached) the terms of the parties' plea agreement.
 Appellate review of plea agreements often involves a mixed question of law and fact. Ordinarily, the interpretation of a party's obligation under a plea agreement is a question of law, which we review de novo; but whether a party has breached a plea agreement is a question of fact, and we review the trial court's finding only for clear error. St. James v. People, 948 P.2d 1028, 1031 (Colo.1997).
 "We interpret plea agreements pursuant to an objective standard, focusing on the meaning a reasonable person would have attached to the agreement under the circumstances." People v. Johnson, 999 P.2d 825, 829 (Colo.2000); see also People v. Manzanares, 85 P.3d 604, 608 (Colo.App.2003).
 Thus, we must determine here whether, when viewed objectively, the circumstances were such as would lead a reasonable person to believe that an Alford plea changed the obligations and rights under the plea agreement.
 Defendant erroneously presupposes that an Alford plea is substantively different, and includes different obligations and rights, from a regular plea agreement such as the one he signed. Because "an Alford plea is the functional equivalent of a guilty plea," People v. Schneider, 25 P.3d 755, 759 (Colo.2001), and, without more, neither detracts from nor adds to the obligations of the parties under a plea agreement, we conclude that the parties' reasonable expectations of their respective rights and obligations under the agreement never changed, regardless of whether defendant entered an Alford plea or a regular guilty plea.
C. Involvement in Plea Discussions and Lack of Advisements
 We are also not persuaded by defendant's contention that the trial court improperly involved itself in plea discussions or failed to adequately advise him about Alford pleas.
 Section 16-7-302(1), C.R.S.2004, and Crim. P. 11(f)(4) provide that a "trial judge shall not participate in plea discussions." This prohibition is designed to prevent coercion by the court in shaping a bargain. People v. Roy, 109 P.3d 993, 995, 2004 WL 1698890 (Colo.App. No. 02CA0590, July 29, 2004); see People v. Clark, 183 Colo. 201, 203, 515 P.2d 1242, 1242-43 (1973) ("In entering into the plea bargaining process with the prosecutor and defense counsel, the trial judge used the power of his position in an attempt to force the defendant to plead guilty. His participation in plea bargaining is fundamentally unfair and brings to bear the full force and majesty of the court on a defendant.").
 Here, unlike the situation in People v. Roy, supra, the trial court did not commit itself to a sentencing position before the agreement was entered into or acted upon by the parties. And, unlike the situation in People v. Clark, supra, the trial court did not attempt to influence defendant to give up his right to go to trial on the first degree murder (or any other) charge.
 Rather, the trial court here simply pointed out that (1) in light of defendant's comments, his plea would not satisfy all the elements of the crime, and thus, did not qualify as a straight guilty plea; and (2) defendant's willingness and intention to plead guilty, despite his refusal to admit he acted knowingly, "in essence ... convert[s] these proceedings to an Alford plea."
 In our view, neither these observations, nor the court's inquiries of the parties as to their intentions in light of this conversion, constituted impermissible involvement by the court in plea discussions. Rather, they were, in the first instance, mere observations regarding the evolving legal posture of the case, and, in the second, inquiries as to whether the parties still wished to consummate their agreement.
 Contrary to defendant's argument, the trial court was not required to advise him of the meaning and nature of an Alford plea. See State v. Brown, 19 Conn.App. 640, 563 A.2d 1379, 1382 (1989). The court was only required to (1) comply with Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), as codified in Crim. P. 11, see People v. Birdsong, supra, 958 P.2d at 1127, and (2) satisfy itself that defendant intelligently concluded his interests required entry of the plea despite protestations of innocence, and that there was strong evidence of actual guilt. See People v. Schneider, supra, 25 P.3d at 759. The trial court met these requirements in this case.
D. Other Issues
 Finally, we note that, in his brief, defendant has raised several other issues which, he asserts, entitle him to a hearing. However, we decline to review those issues, inasmuch as they are presented to us only in a perfunctory or conclusory manner. See United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991) ("A skeletal `argument,' really nothing more than an assertion, does not preserve a claim."); cf. People v. Diefenderfer, 784 P.2d 741, 752 (Colo.1989) (reviewing court needs to be informed of specific errors and the grounds, supporting facts, and authorities therefor).
 Because those of defendant's contentions that are properly before us were resolvable, as a matter of law, based on the record, the trial court did not err in denying defendant's motion without conducting a hearing. And because defendant was not entitled to an evidentiary hearing, he was also not entitled to additional appointed counsel. See People v. Salinas, 55 P.3d 268, 271 (Colo.App.2002).
 The order is affirmed.
 Judge CASEBOLT and Judge PICCONE concur.