22CA1882 Peo v Finch 01-02-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1882
Boulder County District Court No. 12CR687
Honorable Norma A. Sierra, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Cody Joseph Finch,

Defendant-Appellant.

---

ORDERS AFFIRMED

Division IV
Opinion by JUDGE KUHN
Harris and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 2, 2025

---

Philip J. Weiser, Attorney General, Katharine Gillespie, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Suzan Trinh Almony, Alternate Defense Counsel, Broomfield, Colorado, for
Defendant-Appellant

¶ 1    Defendant, Cody Joseph Finch, appeals the postconviction court's orders denying his Crim. P. 35(c) motion without a hearing. We affirm.

## I.    Background and Procedural History

¶ 2    In January 2013, Finch was found guilty of sexual assault, second degree assault, second degree burglary, stalking, tampering with a victim, conspiracy to commit tampering with a victim, bribing a victim, and conspiracy to commit bribing a victim. Finch appealed, and a division of this court affirmed the conviction and sentence in November 2016. A year and a half later, Finch filed a pro se petition for postconviction relief under Rule 35(c), in which he asserted claims of ineffective assistance of trial counsel. The postconviction court appointed postconviction counsel to represent Finch, and postconviction counsel subsequently filed a supplemental Rule 35(c) petition.

¶ 3    In December 2020, the postconviction court ruled on the petition. The court summarily rejected all of Finch's contentions except the one claiming that trial counsel failed to investigate the prosecution's expert technology witness, Detective Jeremy Shavin. The court then set a deadline for the prosecution to respond to the

remaining claim. After that response, Finch's postconviction counsel filed a request for a hearing on the remaining issue. The postconviction court then denied Finch's remaining claim, resolving the matter without a hearing.

## II. Analysis

¶ 4      Finch contends that the postconviction court erred by denying a hearing on his petition. Finch argues that his trial counsel's performance was constitutionally deficient when he failed to (1) investigate the prosecution's technology expert and retain his own; (2) properly address text messages regarding a prior felony; (3) investigate Finch's competency; (4) interview and call two witnesses to testify; and (5) retain a bitemark expert. Additionally,

he argues that cumulative error should lead to reversal.[1]  We

address these arguments in turn.

A.    Applicable Law and Standard of Review

¶ 5    We review de novo a district court's denial of a Rule 35(c)

motion without a hearing.  *See People v. Phipps*, 2016 COA 190M,

¶ 20.

¶ 6    When the motion, the files, and the record clearly establish

that the defendant is not entitled to relief, a court may deny a Rule

35(c) motion without a hearing.  *See Ardolino v. People*, 69 P.3d 73,

77 (Colo. 2003).  Summary denial of a motion for postconviction

relief is also appropriate if the claims raise only an issue of law, or if

the allegations, even if true, provide no basis for relief.  *People v.*

*Venzor*, 121 P.3d 260, 262 (Colo. App. 2005).  Likewise, a court may

---

[1] Finch appears to raise eighteen other claims, in a bulleted list, within his argument for cumulative error.  However, he provides no facts, analysis, or legal argument in support of these claims and thus, the postconviction court's denial of a hearing on these unsupported claims is affirmed.  *See People v. Rodriguez*, 914 P.2d 230, 250 (Colo. 1996) (summarily affirming when appellant fails to "inform this court 'both as to the specific errors relied upon and as to the grounds, supporting facts and authorities therefor'" (quoting *People v. Diefenderfer*, 784 P.2d 741, 752 (Colo. 1989))); *Cikraji v. Snowberger*, 2015 COA 66, ¶ 21 n.3 ("We do not consider bald factual or legal assertions presented without argument or development.").

also deny the motion without a hearing if the claims are bare and conclusory in nature, or if they lack supporting factual allegations. *See id.*

¶ 7 Review under Rule 35(c) is limited. Proceedings under the rule "are intended to prevent injustices after conviction and sentencing, not to provide perpetual review." *People v. McDowell*, 219 P.3d 332, 335 (Colo. App. 2009). One ground for review is "[t]hat the conviction was obtained or sentence imposed in violation of the Constitution or laws of the United States or the constitution or laws of this state." Crim. P. 35(c)(2)(I). In a proceeding under Rule 35, "the legality of the judgment and the regularity of the proceedings leading up to the judgment are presumed, and the burden is upon the applicant to establish by a preponderance of the evidence the allegations of his motion." *Kailey v. Colo. State Dep't of Corr.*, 807 P.2d 563, 567 (Colo. 1991); *see also People v. Pendleton*, 2015 COA 154, ¶ 6.

¶ 8 "In all criminal prosecutions the accused shall . . . have the Assistance of Counsel for his defense." U.S. Const. amend. VI. As the Supreme Court has long recognized, "the right to counsel is the right to the effective assistance of counsel." *Strickland v.*

*Washington*, 466 U.S. 668, 686 (1984) (citation omitted). "In order to prevail on an ineffective assistance of counsel claim, a defendant must prove that 1) counsel's performance was deficient and 2) the deficient performance prejudiced the defense." *Dunlap v. People*, 173 P.3d 1054, 1062 (Colo. 2007) (citing *Strickland*, 466 U.S. at 687). A court may resolve an ineffective assistance of counsel claim "solely on the basis that the defendant has failed in either regard." *People v. Romero*, 2015 COA 7, ¶ 25 (citing *People v. Garcia*, 815 P.2d 937, 941 (Colo. 1991)).

## B. The Technology Expert

¶ 9 Finch argues that he is entitled to a hearing on whether his counsel provided ineffective assistance by failing to investigate the prosecution's technology expert and retain his own for rebuttal. We disagree.

¶ 10 Before Finch's trial, the prosecution disclosed information regarding its computer forensics expert, Detective Shavin. As relevant to this appeal, the prosecution disclosed that Detective Shavin would testify "that [Finch] was accessing [the victim's] Yahoo! email account during the time frame that she allegedly sent [Finch] an exculpatory email." This testimony related to two emails

appearing to contain recantations — sent from the victim to Finch — about the sex assault allegations.

¶ 11 During the first day of trial, the prosecution, Finch's trial counsel, and the court discussed the emails and Detective Shavin's testimony. Finch's counsel requested that the trial court either exclude the evidence or grant a continuance and require a supplemental report on the basis of Detective Shavin's opinion. The trial court denied the continuance, but it withheld ruling on the request for exclusion because the prosecution did not intend to introduce the emails or related evidence in its case-in-chief. In addition, the trial court gave Finch's counsel the opportunity to talk to Detective Shavin and then inform the court of Finch's position.

¶ 12 The record reflects that Finch's trial counsel spoke with Detective Shavin and informed the trial court that "we're doing some additional investigation based upon that. Should that lead us somewhere, we'll have additional discussions" and "we have

multiple people working on it right now."[2]  Ultimately, Finch's counsel did not again raise the issue with the court, the emails were not introduced, and no party presented evidence stating that Finch had sent the recantations from the victim's account to his own.

¶ 13     In this appeal, Finch argues that he is entitled to a hearing because his trial counsel failed to timely review the expert materials and investigate the matter, which prevented Finch from retaining his own expert to examine the computer forensics.  He says that "a hearing would provide an opportunity for a defense technology expert to examine the materials and to offer an expert opinion as to whether a defense expert could have sufficiently rebutted the prosecution expert testimony."

¶ 14     We do not need to address whether Finch's trial counsel's performance was deficient because, regardless, his claim fails at the prejudice prong.  *See Romero,* ¶ 25 ("[A] court may resolve [an ineffective assistance of counsel] claim solely on the basis that the

---

[2] Additionally, trial counsel stated that he discussed the technology expert and his conclusions with the prosecution as early as December, a month before trial, and that he had reviewed the evidence.  The record undercuts Finch's assertion that his trial counsel had not reviewed the expert's materials before trial.

defendant has failed in . . . regard" to either prong.). To satisfy the prejudice prong of the *Strickland* test, Finch must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ardolino*, 69 P.3d at 76 (citing *Strickland*, 466 U.S. at 694).

¶ 15    Finch's prejudice argument is speculative.[3] He argues that a theoretical expert could testify on his behalf at a hearing, but he does not identify any such individual or what their testimony would be. He does not assert that the prosecution's computer forensics expert was wrong. And he does not allege facts that would rebut that expert's conclusions. Instead, he simply concludes, without alleging supporting facts, that an expert would testify in his favor.

---

[3] We note that a portion of Finch's argument is also dedicated to a statement by Judge Hartman, which said that "the Court FINDS this [expert witness] claim survives and a hearing on this issue issues [sic] is warranted and that. [sic]." However, within that same order, the court ordered the prosecution to respond to the arguments raised about the expert witness issue, demonstrating that this statement was not a final ruling. And after the prosecution responded, Judge Sierra determined that a hearing was not warranted on the issue. To the extent that Finch argues that Judge Hartman's statement about a hearing was controlling, we reject that argument given its context in an order setting a deadline for the prosecution to respond. And the district court was free to revisit its ruling after reviewing the prosecution's response.

And despite Finch referring to the emails as "exculpatory," he never asserts that he did not send the recantation emails to himself from the victim's account. Further, he does not allege that an additional investigation — beyond what is reflected in the record — would have produced anything to rebut the prosecution's expert.

¶ 16 "[I]f the claims are bare and conclusory in nature, and lack supporting factual allegations, the motion may . . . be denied without a hearing." *Venzor*, 121 P.3d at 262. Further, speculation or conjecture cannot be the basis for a claim of ineffective assistance of counsel. *See Dunlap*, 173 P.3d at 1074 (citing *People v. Holman*, 647 N.E.2d 960, 966 (1995) (discussing the *Strickland* standard)). As other divisions of this court have determined in the context of expert witness testimony, "'[w]hen the evidence only provides speculative proof of prejudice,' a defendant's ineffective assistance claim fails." *People v. Thompson*, 2020 COA 117, ¶ 55 (quoting *People v. Finney*, 2012 COA 38, ¶ 66).

¶ 17 Finch's prejudice argument relies entirely on speculation and conclusory assumptions that cannot support his claim for relief. Thus, we discern no error in the postconviction court's denial of his computer expert claim without a hearing.

¶ 18    Finch argues that he is entitled to a hearing on whether his counsel provided ineffective assistance regarding the admission of a text message containing a reference to his prior conviction.  We disagree.

### 1.    Additional Background

¶ 19    On the second day of trial, the prosecution introduced an exhibit containing a series of text messages during the victim's direct examination.  The trial court admitted the exhibit and allowed it to be published to the jury without objection from Finch's trial counsel.  Then, the victim read aloud to the jury four texts numbered 8228 through 8231.

¶ 20    Another of the text messages in the exhibit was text number 8235.  This text message contained a brief reference to Finch having a prior felony.  While this message was not read aloud to the jury, it was published to the jurors, and they could have temporarily viewed it.[4]  Text 8235 read as follows:

---

[4] All parties agree that the inclusion of this message, as unredacted in the exhibit, was accidental.

No I'm in some shit typical drunk fight with [Finch] cops came he took off they found the gun I borrowed from his mom to go camping and he has a prior felony so yeah I need to talk to you in person I have to give them a new sober statement and I have to meet with the detective on Tuesday morning at 8:30 in boulder and I just need to talk to you.

¶ 21   Later that day, Finch's counsel noticed that text 8235 included the prior felony reference. He raised the issue with the trial court, moved for a mistrial, and moved to withdraw on the grounds that his failure to notice the reference to the prior felony may have been ineffective assistance of counsel. The trial court denied the motion for a mistrial and the request to withdraw. It then instructed the parties to redact the exhibit and requested that they create a limiting instruction.

¶ 22   The following day, the parties informed the court that they would not be requesting a limiting instruction because "it would unnecessarily highlight evidence that's going to be taken out of the record so we don't think that a limiting instruction is necessary." The trial court agreed and requested that the parties thoroughly review the exhibits again for any impermissible references before the newly redacted versions were presented to the jury.

## 2. Preservation

¶ 23    Finch contends that allowing the admission of text 8235 was deficient performance and that it caused prejudice because his trial counsel's mistake prevented him from testifying at trial. He argues that his counsel advised him not to testify because if he testified, it would make his prior felony admissible. This, in turn, would prevent him from appealing the denial of his motion for mistrial.

¶ 24    The People concede that this issue was preserved. However, we have an independent duty to ensure that an issue is preserved for our review. *People v. Tallent*, 2021 CO 68, ¶ 11 ("[A]n appellate court has an independent, affirmative duty to determine whether a claim is preserved and what standard of review should apply, regardless of the positions taken by the parties."). Based on our review of the record, the Rule 35(c) petition, and the supplement, Finch did not raise this specific prejudice argument to the trial court.

¶ 25    In a Rule 35(c) motion based on ineffective assistance of counsel, "[t]o preserve an issue for appeal, one must frame the issue in specific rather than general terms." *People v. Bossert*, 722 P.2d 998, 1010 (Colo. 1986). "We do not require that parties use

12

'talismanic language' to preserve particular arguments for appeal, but the [postconviction] court must be presented with an adequate opportunity to make findings of fact and conclusions of law on any issue before we will review it." *People v. Melendez,* 102 P.3d 315, 322 (Colo. 2004).

¶ 26     Because Finch did not bring this argument to the attention of the postconviction court, the court did not have an opportunity to rule on it, and the argument is unpreserved.[5]  Thus, we will not review it.  *See People v. Goldman,* 923 P.2d 374, 375 (Colo. App. 1996) ("Allegations not raised in a Crim. P. 35(c) motion or during the hearing on that motion and thus not ruled on by the trial court are not properly before this court for review.").

¶ 27     Conversely, Finch properly preserved his claim that his counsel was ineffective in allowing the text messages into evidence in the first place.  We now turn to this argument.

---

[5] And regardless of preservation, the record rebuts Finch's claim that he was coerced into not testifying.  Instead, it demonstrates that he waived his right freely, voluntarily, and knowingly after being advised by the court.

13

### 3. Finch's Petition Fails to Demonstrate Prejudice

¶ 28 Finch argues both that his trial counsel's performance was ineffective by allowing text 8235 into evidence and that he was prejudiced because the jurors may have read it. However, we need not reach the performance prong of *Strickland* because Finch fails to demonstrate prejudice.

¶ 29 To meet the prejudice prong, Finch must allege that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *See Ardolino*, 69 P.3d at 76; *see also Hagos v. People*, 2012 CO 63, ¶ 17. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶ 30 Colorado case law provides that a brief reference to prior criminal misconduct doesn't necessarily constitute grounds for a new trial or establish prejudice. *See People v. Lahr*, 2013 COA 57, ¶ 24 (noting that "an ambiguous reference to evidence of a defendant's criminality does not necessitate a new trial"); *People v. Salas*, 2017 COA 63, ¶ 12 ("[F]leeting references to a defendant's alleged criminal history have even less prejudicial impact." (citing *Lahr*, ¶ 24)); *People v. Abbott*, 690 P.2d 1263, 1269 (Colo. 1984)

14

("[T]he mere reference to an accused's past criminal act is not per se prejudicial, requiring a new trial."). Instead, we must analyze the circumstances of the case to determine whether Finch was prejudiced. *See Salas*, ¶ 12 (citing *Abbott*, 690 P.2d at 1269).

¶ 31 Finch's argument fails to allege facts that would demonstrate a reasonable probability that the outcome of the proceeding would have been different. He argues that because a juror submitted a question about his inability to buy a gun, that juror may have read text 8235 and could have been prejudiced by its inadvertent admission. However, this argument is speculative, as Finch's briefing acknowledges when he says, "This is a factual issue which requires an evidentiary hearing to establish whether jurors saw the inadmissible evidence regarding Mr. Finch's prior felony conviction, and thus determine whether Mr. Finch was prejudiced."

¶ 32 Finch's ineffective assistance claim cannot rely solely on speculative proof of prejudice. *See Thompson,* ¶ 55 (citing *Finney,* ¶ 66). Further, the trial court may deny a bare, conclusive, and factually unsupported ineffective assistance of counsel motion without a hearing. *See Venzor,* 121 P.3d at 262.

¶ 33    Moreover, a division of this court already rejected essentially

this same argument on direct appeal:

> Even if we assume that the jury read the text
> message that referenced Finch's prior felony,
> we cannot conclude that the "mere fleeting and
> ambiguous reference" to Finch's criminality
> required a new trial.  *See* [*People v.*] *Everett*,
> 250 P.3d [649, 662 (Colo. App. 2010)].  "[T]he
> mere reference to an accused's past criminal
> act is not per se prejudicial, requiring a new
> trial"; rather, we must consider the
> circumstances in each case. . . .  And here, the
> reference contained no details of the facts
> underlying the charge or the nature of the
> crime.  The exhibit contained a single reference
> to the prior crime, and this fact was not
> highlighted or mentioned by the prosecution at
> all.  *See* [*Abbott*, 690 P.2d at 1269] (a single,
> unelicited, nonspecific reference to the
> defendant's past criminal acts did not require
> a mistrial); *People v. Lowe*, . . . 519 P.2d 344,
> 347 (1974) (lone reference to defendant's
> incarceration on another charge did not
> warrant mistrial because the reference was
> inadvertent and did not describe the details of
> the charge).

*People v. Finch*, slip op. at 26 (Colo. App. No. 13CA1110, June 9,

2016) (not published pursuant to C.A.R. 35(e)).  Finch presents us

with no argument — nor do we see any — demonstrating how the

division got it wrong.  In other words, Finch doesn't explain how, if

16

he wasn't entitled to a mistrial, the outcome of the proceeding still would have been different without the text.

¶ 34    Thus, Finch fails to demonstrate the second *Strickland* prong, and we discern no error in the postconviction court's denial of this issue without a hearing.  *See Romero*, ¶ 25.

### D.    Consideration of Finch's Mental Capacity

¶ 35    Finch contends that the postconviction court was required to conduct a hearing on his Rule 35(c) claim that his trial counsel failed to consider his incompetency to stand trial.  We again disagree.

¶ 36    Finch argues that he suffered from significant mental health issues, including suicidal ideation, and that he was mentally impaired during the course of the case.  He states that these mental health issues prevented him from adequately contributing to his defense.  The postconviction court denied this claim without a hearing, finding that Finch's pro se motion for a new trial — drafted less than two weeks after trial and well written — strongly suggested that his mental health issues did not prevent him from "adequately contributing to his defense during trial and in the months leading up to it."

¶ 37    On appeal, Finch argues that the postconviction court incorrectly presumed that he had written the motion for a new trial — instead of an unidentified ghostwriter — and that a hearing was necessary to determine if he was the author.  The trial court made this authorship finding sua sponte, as Finch did not argue it in his original or supplemental Rule 35(c) petition.

¶ 38    Finch says that it was improper for the trial court to make such a finding without holding a hearing.  However, we need not reach that question because, regardless, Finch's argument fails.  He doesn't assert that he was not the author or that someone else wrote the motion for new trial.  To the contrary, he skirts around that key fact and merely speculates that he might not have been the author.  As stated above, speculation or conjecture cannot be the basis for a claim of ineffective assistance of counsel.  *See Dunlap*, 173 P.3d at 1074.

¶ 39    But even if Finch's argument was not speculative, it still fails.  The sum total of his allegations of incompetency in his Rule 35(c) petition are as follows:

> Counsel failed to consider [Finch]'s incompetency; which constituted ineffective assistance of counsel.  Counsel was aware of

18

significant mental health issues [Finch] was struggling through in the recent past including a suicide attempt just a week prior to allegations, his mental impairment during the case proceedings, as well as his mental health struggles throughout his lifetime. These issues impaired [Finch] in a way where he could not adequately contribute to his defense. In these instances, counsel has an obligation to investigate these problems and bring them to the attention of the court. Further evidence of this claim will be presented at hearing on the matter.

¶ 40    The authorship of the new trial motion was only a small part of the postconviction court's basis for denying his claim. The key portion of the postconviction court's finding was that

> [t]he record demonstrates that not only were trial counsel aware of [Finch's] mental health struggles, they also considered it in their trial strategy as they filed a motion in limine to exclude reference that [Finch] was taken to Boulder Community Hospital after suicidal comments. Trial counsel argued at the November 26, 2012 hearing that evidence that [Finch] was suicidal was not relevant because the defense had not pleaded a mental health defense, or a not guilty by reason of insanity/impaired mental condition defense. Although a suicide attempt may suggest a mental health disorder, based upon a review of the trial transcript, there was significant evidence presented at trial and in the record that [Finch's] suicidal comments and his attempt in the days preceding his arrest were part of the domestic violence cycle and were

19

> meant to manipulate the victim in this case. And finally, competency evaluations are intrusive and discoverable and inadvisable in cases where it is likely that a defendant is not suffering from a mental health disability that prevents him from rationally consulting with his attorneys; it was a reasonably strategic [choice] to not request one in this case.

(Citations omitted.)

¶ 41 The record supports the trial court's determination that Finch's counsel was aware of his mental health condition and was reasonable in not seeking a competency evaluation.[6] Finch's speculative argument and the record do not convince us that the court was incorrect. Thus, we discern no error in the postconviction court's denial of this claim without a hearing. *See Ardolino*, 69 P.3d at 77.

---

[6] To the extent that Finch contests the postconviction court's quoted findings, he argues that, as a blanket rule, a hearing is necessary so that his counsel and an unnamed expert could testify about whether counsel's performance was deficient. This argument is again speculative, and it does not correctly state the law on this point. *See Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003) ("A motion for postconviction relief pursuant to Crim. P. 35(c) may be denied without an evidentiary hearing only where the motion, files, and record in the case clearly establish that the allegations presented in the defendant's motion are without merit and do not warrant postconviction relief.").

### E. Failure to Interview or Call Neighbors as Witnesses

¶ 42    Finch contends that he was entitled to a hearing on his claim that his trial counsel was ineffective for failing to interview and call two additional witnesses.  We disagree.

¶ 43    Finch argues that trial counsel failed to interview and call Kelsey Kennoy and Cameron Sadafi, who were awake in their room in the adjacent residence during one of the alleged assaults.  The postconviction court denied this motion, finding that Finch "did not allege specifically what these witnesses would testify to; he alleged only that their testimony would directly contradict the victim's testimony."  Further, the postconviction court found that there was no prejudice because Finch introduced testimony from Detective Jeremy Frenzen recounting his interview with Kennoy and Sadafi.

¶ 44    We need not determine if Finch's trial counsel's performance was deficient because we agree that he failed to sufficiently allege prejudice.  *See Romero*, ¶ 25.  Finch doesn't assert facts that, if true, would provide a basis for relief.  *See White v. Denver Dist. Ct.*, 766 P.2d 632, 635 (Colo. 1988).  Instead, his petition and supplement set forth a bare and conclusory allegation that Kennoy

and Sadafi would present testimony directly contrary to the victim. This statement does not identify what the witnesses would actually say or present any supporting facts.[7] *See Venzor*, 121 P.3d at 262.

¶ 45 Further, even if his assertion was not conclusory, his trial counsel elicited testimony from Detective Frenzen that Kennoy and Sadafi were the victim's neighbors and did not hear fighting or yelling on the relevant night. There is no indication that Kennoy and Sadafi would testify beyond this or that an investigation would have revealed anything different.

¶ 46 Finch admitted testimony rebutting a fight through Detective Frenzen, and there is no explanation for how trial counsel's failure to readmit the same evidence through a different witness was prejudicial. We agree with the People that a failure to conduct independent interviews when counsel knew the substance of the testimony is not enough to demonstrate prejudice. *See DeCastro v. Branker*, 642 F.3d 442, 452 (4th Cir. 2011) ("The Sixth Amendment

---

[7] We note that Finch's appellate brief expands on what the witnesses could testify to, such as their location in relation to the assault, the ability to hear arguments, and their bias. However, Finch did not assert these allegations to the trial court. *See People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004).

. . . does not always compel counsel to undertake interviews and meetings with potential witnesses where counsel is familiar with the substance of their testimony." (quoting *Huffington v. Nuth*, 140 F.3d 572, 580 (4th Cir. 1998))). There is simply nothing in the Rule 35(c) petition or supplement revealing testimony that would have changed the outcome of this proceeding.

¶ 47    Thus, we discern no error in the postconviction court's denial of this claim without a hearing.

### F.    Failure to Retain a Bitemark Expert

¶ 48    Finch contends that the postconviction court erred in dismissing his bitemark expert claim without a hearing. We again disagree.

¶ 49    Finch argues that his counsel performed deficiently by failing to interview or consult a bitemark expert who would testify that injuries to his chest were not consistent with being bitten and were present for longer than a week, contradicting the victim's testimony at trial. In his reply brief, he references a letter written by John D. McDowell, a Colorado School of Dental Medicine professor, which Finch filed in support of his argument.

¶ 50    This letter was filed in the district court on February 1, 2022, over a year after the postconviction court issued its ruling denying Finch's bitemark expert claim without a hearing.[8]  On appeal, we review the record as it stood before the district court at the time of its ruling.  *See Bd. of Med. Exam'rs v. Duhon*, 867 P.2d 20, 23 (Colo. App. 1993) ("[W]e must consider whether the court erred in entering its order . . . by looking solely to the record that was before that court at the time it entered that order."), *aff'd*, 895 P.2d 143 (Colo. 1995).  Thus, when we review the postconviction court's findings, we generally do not consider materials that were supplied after the ruling.  However, even if we were to consider the substance of the McDowell letter here, it would not change our conclusion.

¶ 51    First, as with many of the issues above, we do not need to address Finch's trial counsel's performance because this issue fails at the prejudice prong.  *See Romero*, ¶ 25.  Finch's argument relies

---

[8] McDowell's letter appears to be a pro se filing while Finch was represented by counsel and was therefore impermissible.  It was also untimely, filed over a year after the court ruled.  Finally, the letter wasn't accompanied by a motion and didn't ask the court to revisit its ruling.

on speculation that an expert "would have testified" in his favor "if it is true that the injuries . . . were not consistent with a bitemark."

¶ 52    Speculation or conjecture cannot be the basis for a claim of ineffective assistance of counsel.  *See Dunlap,* 173 P.3d at 1074. And in an expert report or scientific testing context, an argument is inherently speculative if the analysis has not been performed.  *See Thompson,* ¶ 55 ("Such an argument is inherently speculative because the testing has not been performed.  'When the evidence only provides speculative proof of prejudice,' a defendant's ineffective assistance claim fails." (quoting *Finney*, ¶ 66)).  Finch did not attach an expert report to his Rule 35(c) petition, instead he vaguely indicated that someone would testify in his favor.  There is no indication in the petition or supplement that an expert had reviewed the claim, which renders it inherently speculative.

¶ 53    Second, even if we assume that Finch's claim is not speculative and the later-supplied McDowell letter contained that expert opinion, it still does not call the postconviction court's ruling into question.  First, as the trial court noted, the allegations about the timing of the bite in the Rule 35(c) petition didn't conflict with the victim's trial testimony.  And the McDowell letter doesn't

address the timing of the bite at all, so it couldn't rebut the postconviction court's conclusion in that regard.

¶ 54 It's true that the McDowell letter addresses the injury to Finch's chest and whether it was a bitemark. But McDowell did not conclude that the injury was not a bite. Instead, he concluded only that "the diffuse bruising patterns depicted in the photographs of [Finch's] chest cannot be attributed exclusively to biting activity to the exclusion of other potential causes of these injuries." So even if the jury had heard that testimony and accepted it as true, it could still have accepted the victim's version of events.

¶ 55 Thus, when reviewing the postconviction court's findings — whether based on the record before the court at the time it ruled or considering the McDowell letter — we discern no error in the court's denial of Finch's claim without a hearing.

### G. Cumulative Error

¶ 56 Lastly, Finch contends that the postconviction court's errors in the aggregate were not harmless and require reversal.

¶ 57 The cumulative error doctrine applies when "the cumulative effect of [multiple] errors and defects substantially affected the fairness of the trial proceedings and the integrity of the fact-finding

26

process." *Howard-Walker v. People*, 2019 CO 69, ¶ 24 (quoting *People v. Lucero*, 615 P.2d 660, 666 (Colo. 1980)). However, our review did not find that the trial court erred. Thus, the cumulative error doctrine is inapplicable, and we reject Finch's final contention.

### III.   Disposition

¶ 58    The orders are affirmed.

JUDGE HARRIS and JUDGE YUN concur.