23CA1211 Peo v Dobson 09-25-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1211
Boulder County District Court No. 17CR1540
Honorable Patrick Butler, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

James Craig Dobson,

Defendant-Appellant.

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE GROVE
J. Jones and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 25, 2025

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Senior Assistant
Attorney General and Assistant Solicitor General, Denver, Colorado, for
Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kelly A. Corcoran, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, James Craig Dobson, appeals the postconviction court's order denying his Crim. P. 35(c) motion for postconviction relief.  We affirm in part, reverse in part, and remand the case for an evidentiary hearing on Dobson's claim that trial counsel provided ineffective assistance by requesting a jury instruction on the lesser included offense of criminally negligent homicide.

## I.     Background

¶ 2     The People charged Dobson with second degree murder following a deadly altercation that he had with the victim, Roland Dequina.  Dobson and Dequina were longtime friends who, as Dobson's opening brief puts it, "were members of a Boulder unhoused community and frequented an area known as 'No Man's Land.'"  Dobson presented evidence at trial that Dequina was intoxicated on the date of the altercation.  Believing that Dobson was involved romantically with Dequina's girlfriend, Dequina confronted Dobson throughout the day and into the night, allegedly threatening him and jabbing him with a large stick.  At some point, Dobson hit Dequina in retaliation.  Late in the evening, Dobson and Dequina again got into a fight, which ended when Dobson struck

Dequina with a stick and left him unconscious on the ground before fleeing the scene. Dequina died a few days later.

¶ 3 Dobson argued at trial that he acted in self-defense, and, for the second degree murder charge, the trial court instructed the jury on the affirmative defense of self-defense. Defense counsel also requested that the court submit an instruction on the lesser included offense of criminally negligent homicide to the jury. The court did so; its instructions on the lesser included offense also included an instruction on self-defense as an element-negating traverse.

¶ 4 The jury acquitted Dobson of second degree murder but found him guilty of criminally negligent homicide. The trial court imposed a five-year sentence in the custody of the Department of Corrections.

¶ 5 Following his unsuccessful direct appeal, Dobson filed a timely pro se Crim. P. 35(c) motion for postconviction relief. The court appointed counsel, who filed a supplemental Crim. P. 35(c) motion on Dobson's behalf. The postconviction court issued a written order denying the motion without an evidentiary hearing.

## II.    Discussion

¶ 6    Although Dobson appeals the postconviction court's denial of his Crim. P. 35(c) motion and supplement, he reasserts only three of his postconviction claims, arguing that trial counsel provided ineffective assistance by failing to (1) advise him before requesting the lesser included offense instruction and not addressing that offense during closing argument; (2) call Lana Christensen as a defense witness to inquire whether she was experiencing hallucinations during the altercation; and (3) call Jonathan Holsinger as a defense witness to "provide[] additional information to the jury regarding the defense of self-defense."

¶ 7    Because we conclude that the postconviction court should have held a hearing on Dobson's claim of ineffective assistance of counsel with respect to the lesser included offense instruction, we

reverse and remand for a hearing on that claim alone. We otherwise affirm the court's order.[1]

### A. Standard of Review and Relevant Law

¶ 8 We review de novo a postconviction court's ruling denying a Crim. P. 35(c) motion without an evidentiary hearing. *People v. Cali*, 2020 CO 20, ¶ 14. Upon receipt of a motion for postconviction relief under Crim. P. 35(c), the court must hold an evidentiary hearing unless "the motion and the files and record of the case show to the satisfaction of the court that the defendant is not entitled to relief." Crim. P. 35(c)(3)(IV). A defendant need not set forth evidentiary support for his allegations in the motion itself; instead, a defendant need only assert facts that, if true, would provide a basis for relief. *White v. Denver Dist. Ct.*, 766 P.2d 632, 635 (Colo. 1988).

---

[1] The claims that Dobson raised in his postconviction motion and supplement but did not reassert on appeal are abandoned and may not be raised again on remand. *See People v. Osorio*, 170 P.3d 796, 801 (Colo. App. 2007) (a defendant abandons a postconviction claim by failing to specifically reassert it in the appeal of the order denying the claim); *see also People v. Rodriguez*, 914 P.2d 230, 249 (Colo. 1996) (The defendant's "failure to specifically reassert on this appeal all of the claims which the district court disposed of . . . constitutes a conscious relinquishment of those claims which he does not reassert.").

¶ 9    To prevail on an ineffective assistance of counsel claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 688, 697 (1984); *Davis v. People*, 871 P.2d 769, 772 (Colo. 1994).  An ineffective assistance claim fails if the defendant is unable to satisfy either prong.  *Strickland*, 466 U.S. at 697.

¶ 10    To establish deficient performance, the defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Dunlap v. People*, 173 P.3d 1054, 1062 (Colo. 2007) (quoting *Strickland*, 466 U.S. at 688).  To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.  A reasonable probability means a probability sufficient to undermine confidence in the outcome.  *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003).

B.    Lesser Included Offense Instruction

¶ 11    Dobson contends that the postconviction court erred by summarily denying his claim that trial counsel provided ineffective assistance by (1) requesting an instruction for the lesser included

5

offense of criminally negligent homicide without consulting him and (2) failing to argue to the jury during closing that he should be acquitted of that lesser included offense. We agree that an evidentiary hearing is required to assess these claims.

¶ 12    "[T]he decision whether to request jury instructions on lesser offenses is a tactical decision that rests with defense counsel after consultation with the defendant." *Arko v. People*, 183 P.3d 555, 556 (Colo. 2008). Because defense counsel retains the ultimate decision-making authority on whether to request a lesser included offense, failure to consult with a client is not per se ineffective. *People v. Newmiller*, 2014 COA 84, ¶¶ 24-25. Instead, a court must assess whether counsel's decision to request a lesser included offense was objectively reasonable under the totality of the circumstances, "examin[ing] counsel's entire performance as it relates to this matter." *Id.* at ¶ 25.

¶ 13    During trial, the court instructed the jury on the elements of second degree murder and the affirmative defenses of "defense of person" and "deadly physical force in defense of person." At defense counsel's request, the jury also received instructions on the elements of criminally negligent homicide. Those instructions

accurately characterized self-defense for that charge as an element-negating traverse rather than an affirmative defense.

¶ 14    Dobson asserts that trial counsel's decision to request the lesser included offense instruction amounted to ineffective assistance because it was not a reasonable strategic decision and, given that the jury acquitted him of second degree murder, there was a reasonable possibility that he would have been acquitted altogether had the jury not been presented with a means of reaching a compromise verdict. And, Dobson adds, had counsel consulted with him about the lesser included offense instruction, he would have opposed it.

¶ 15    In rejecting this claim, the postconviction court acknowledged that "[i]t is unclear to the Court if Defendant was advised of the possibility of a less[e]r included offense by his trial counsel." It ruled, however, that the allegations in Dobson's postconviction motion failed both the performance and prejudice prongs of *Strickland*, concluding that "the result of the trial shows that the jury did not accept Defendant's self-defense claim" and that "[t]he decision to ask the Court to instruct the jury on a lesser offense . . . was a strategic decision made by counsel during the trial."

¶ 16    Similarly, the People assert on appeal that "[t]he jury unequivocally rejected self-defense when it convicted Dobson of criminally negligent homicide."  And, they contend, because "self-defense applied to both second-degree murder and criminally negligent homicide," making the lesser included charge available to the jury was a reasonable strategic decision because it allowed for a compromise verdict with far less serious consequences than a second degree murder conviction.

¶ 17    We first address *Strickland*'s performance prong.  As we understand the postconviction court's order, it concluded that trial counsel's request for the lesser included instruction was an "objectively reasonable" strategic decision in light of the evidence presented at trial and that any failure by trial counsel to consult with Dobson about that decision did not amount to ineffective assistance.  The People echo these conclusions on appeal, pointing out the stark differences in sentencing exposure between second degree murder and criminally negligent homicide and asserting that requesting the lesser included instruction would encourage a compromise verdict — which, given the incriminating evidence against Dobson, would be a very favorable outcome.

¶ 18    These arguments have some force, but they are undercut at this stage of the proceedings by the fact that they are speculative. It may well be true that, after observing what happened at trial, defense counsel made a considered strategic decision that an "all-or-nothing" approach would likely result in a second degree murder conviction and that giving the jury an opportunity to compromise would substantially reduce the chances of that result.  But we cannot make that inference based on the record before us; indeed, while trial counsel's decision to request the lesser included instruction may have been a well-considered strategy, it is also conceivable that trial counsel decided to request the lesser included instruction for some other reason entirely.  A hearing is the only way to make that determination.[2]

---

[2] Notably, a hearing occurred in each of the cases that the People cite for the proposition that the decision to request a lesser included offense instruction is an objectively reasonable strategic decision. *See People v. Newmiller*, 2014 COA 84, ¶¶ 26-27; *Morrison v. State*, 701 S.W.3d 879, 883 (Mo. Ct. App. 2024); *Jinkerson v. State*, 666 S.W.3d 318, 325 (Mo. Ct. App. 2023); *Campbell v. State*, 598 S.W.3d 611, 615 (Mo. Ct. App. 2020).  The People cite no cases, and we have found none, in which an appellate court has concluded that the request for a lesser included offense instruction was objectively reasonable based solely on the trial record.

¶ 19    Turning to *Strickland*'s prejudice prong, the jury obviously did

not accept Dobson's self-defense argument with respect to the

criminally negligent homicide charge.  But because self-defense was

a traverse to the criminally negligent homicide charge — and not, as

it was for second degree murder, an affirmative defense — we

cannot infer that the jury's rejection of the self-defense argument in

the context of the lesser included charge would have also led it to

acquit him of second degree murder in the absence of the lesser

included instruction.

> There are, generally speaking, two types of
> defenses to criminal charges: (1) "affirmative"
> defenses that admit the defendant's
> commission of the elements of the charged act,
> but seek to justify, excuse, or mitigate the
> commission of the act; and (2) "traverses" that
> effectively refute the possibility that the
> defendant committed the charged act by
> negating an element of the act.

*People v. Pickering*, 276 P.3d 553, 555 (Colo. 2011).  "In Colorado, if

presented evidence raises the issue of an affirmative defense, the

affirmative defense effectively becomes an additional element, and

the trial court must instruct the jury that the prosecution bears the

burden of proving beyond a reasonable doubt that the affirmative

defense is inapplicable."  *Id.*  "If, on the other hand, the presented

evidence raises the issue of an elemental traverse, the jury may consider the evidence in determining whether the prosecution has proven the element implicated by the traverse beyond a reasonable doubt, but the defendant is not entitled to an affirmative defense instruction." *Id.*

¶ 20    This distinction is critical.  The fact that the jury rejected self-defense as an element-negating traverse when considering the criminally negligent homicide charge does not inevitably lead to the conclusion that it would have also found that the prosecution had disproved the affirmative defense of self-defense with respect to the charge of second degree murder.  Put another way, the jury's determination that the prosecution proved the elements of criminally negligent homicide beyond a reasonable doubt despite Dobson's self-defense argument does not compel us to conclude that it would have rejected the affirmative defense of self-defense with respect to second degree murder.  And because the jury's verdict on the criminally negligent homicide count did not necessarily dictate the outcome of the second degree murder charge in the absence of the lesser included offense, we cannot reject Dobson's assertion of prejudice based on the existing record.

¶ 21    Accordingly, we conclude that the postconviction court must hold an evidentiary hearing on Dobson's claim that trial counsel's decision to request a lesser included offense instruction amounted to ineffective assistance of counsel.

C.    Decision Not to Call Allegedly Hallucinating Witness

¶ 22    Dobson next contends that trial counsel provided ineffective assistance by failing to call Lana Christensen as a defense witness to inquire into whether she was experiencing hallucinations during the altercation, and for not investigating this issue before trial. Specifically, he alleges that Christensen was hallucinating when she reported seeing four other people at the scene and argues that the prosecution relied extensively on her statements and testimony such that evidence of these hallucinations "would have undermined her eyewitness account and made a different outcome reasonably likely." We conclude that no hearing was required on this claim.

¶ 23    Although the postconviction court rejected Dobson's claim on other grounds, a court may deny a Crim. P. 35(c) motion without a hearing if the claims are bare and conclusory in nature and lack supporting factual allegations. *People v. Venzor*, 121 P.3d 260, 262 (Colo. App. 2005). As presented both below and on appeal, Dobson

12

asserts only that Christensen was hallucinating and that evidence of this would have undermined her testimony. However, he provides no information about the nature of these hallucinations, their cause, the significance of Christensen hallucinating when she reported seeing four other people, or any other information that would explain how trial counsel's performance on this matter was ineffective. Thus, we conclude that this allegation is bare and conclusory, and the postconviction court did not err by denying it without a hearing.

### D. Decision Not to Call Fourth Witness

¶ 24 Dobson also contends that he was entitled to a hearing on his claim that trial counsel provided ineffective assistance by failing to call Jonathan Holsinger as a witness "to testify that Mr. Dequina was acting violently shortly before the incident." We disagree.

¶ 25 At trial, three defense witnesses testified about Dequina's aggressive behavior on the day of the altercation. Trial counsel elicited testimony from these witnesses that Dequina provoked, behaved aggressively toward, and threatened Dobson and eventually struck him with a long stick. Dobson contends, however, that trial counsel should have called Holsinger as a fourth

witness to testify to these same facts because he would have described Dequina's behavior "about 30 minutes before the incident" rather than "earlier in the day, around 4 p.m." According to Dobson, Holsinger's testimony would not have been cumulative because "none [of the witnesses called by trial counsel] testified to observing Mr. Dequina shortly before the late-night interaction with Mr. Dobson."

¶ 26 However, as the People point out on appeal, one witness testified that he was present during the day and as "[i]t started getting nighttime" and that "[i]t was a nice, quiet night." This undercuts Dobson's claim that Holsinger's testimony would not have been cumulative because it uniquely recounted events occurring during the evening. Accordingly, Dobson cannot show that he was prejudiced by trial counsel's decision not to call a witness whose testimony would have replicated the testimony of three other witnesses in all respects except for slightly different timing. Because, as the district court found, "a fourth witness would have been cumulative," Dobson could not satisfy *Strickland*'s prejudice prong, and the district court properly rejected this claim without a hearing.

## III. Disposition

¶ 27    We reverse the district court's denial of Dobson's claim of ineffective assistance with respect to the lesser included offense instruction and remand for an evidentiary hearing on that claim.  In all other respects, we affirm the district court's order.

JUDGE J. JONES and JUDGE SCHUTZ concur.